[Crim. No. 10533.   Second Dist., Div. Four.   Aug. 25, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LEE REX LUDLUM, Defendant and Appellant.

A. James Ayers for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert A. Feldman, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged by information with a violation of section 11530 of the Health and Safety Code (possession of marijuana). A motion to dismiss under section 995 of the Penal Code was made and denied. He pled not guilty and after trial by a jury, he was found guilty. A motion for new trial was made and denied, and defendant was sentenced to one year in the county jail, which sentence was suspended and probation was granted. He has appealed from the judgment (order granting probation). (Pen. Code, § 1237, subd. 1.)

The testimony for the People was as follows:

About 3 a.m., Officer Davis, who was in plain clothes and acting as an undercover officer, observed defendant leave a pizza restaurant on the Venice Beach, cross the boardwalk and approach his auto in a parking lot. After defendant entered his car, and while the officer was about 5 feet away on the driver's side, the officer observed defendant take a paper napkin from his pocket. In the officer's words:

"He took a napkin and opened it up and appeared to look at the contents.

"I observed two handrolled cigarettes within the napkin. At this time he opened the left door with his left hand, and threw the articles out on the ground."

The articles lit about 3 feet from the left side of the car. Keeping the napkin under constant observation, the officer walked in back of defendant's car for a short distance and gave a prearranged signal to officers in a police car which had arrived at the parking lot. Officer Bach, from the police car, approached Officer Davis, pretended to shake him down for weapons and to interrogate him. Officer Davis told Officer Bach what he had seen and, while Officer Davis observed him, Officer Bach walked to the napkin, picked it up and returned to Officer Davis. The two officers examined the contents and concluded that they were handrolled marijuana cigarettes.[1]

Again, in Officer Davis' words:

"At this time I suggested that I be placed under a feigned arrest situation.

"I was handcuffed and placed in the rear of the unmarked police vehicle. After that I believe Officers Tudor and Bach stopped Mr. Ludlum when his vehicle was adjacent to the police vehicle.

"They had a conversation with him, which I did not overhear, and he subsequently was handcuffed and placed in the rear of the police vehicle next to me."

Officer Davis' account of the events thereafter was as follows:

"When the defendant was placed in the vehicle to my left, a conversation took place.

"I stated to him, 'What do they have you on, Man?'

"And he stated, 'Oh, they found a bottle of wine in my car. I am worried about getting back to the base.'

"I then stated, 'Did they get you dirty?'

"And he said, in a low voice, 'There was a stick in the

---

[1]The napkin and contents thus secured by Officer Bach were introduced as evidence at the trial, and, by appropriate testimony, the contents were shown to be marijuana.

napkin, but they did not see me throw it from the vehicle. I am going to clam up.'

"I stated, 'Where did you get the weed?'

"And he stated, 'I have been carrying it for some time.'

"That was the extent of the conversation pertaining to the arrest."[2]

Officer Bach, after corroborating the testimony of Officer Davis to the preliminary conversation between them, testified that he first asked defendant for identification, and why he was in that area at that time of the morning. He then testified:

"Then I asked him about the napkin containing marijuana, and he said he didn't know what I was talking about, and I asked him, did he come out of Angelo's Pizza House, and he said he did, and he said the only napkin he had was one that had a tea bag in it, and that is what he had thrown away."

Defendant's testimony at the trial was to the same effect as his story to Officer Bach; he denied the conversation to which Officer Davis had testified.

The jury, and the trial court, believed the testimony of the two police officers and rejected defendant's version. We are bound by the factual findings of the trial court.

By objections at the trial, and by motion for new trial, defendant properly and promptly objected to the admission into evidence of the conversation with Officer Davis in the police car. We conclude that this evidence was improperly admitted and (since it amounted to a confession of every element of a violation of section 11530) that its admission compels a reversal. (*People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].)

Admittedly, defendant was under arrest for the crime herein involved; clearly, suspicion had "focused" on him, not only because he had been arrested but because, accepting (as here we must) the testimony of the officers, they knew, of their own knowledge, that defendant had been in possession of the cigarettes and their experience had convinced them of their narcotic character. There is no claim, nor could there be, that any warning of constitutional rights had been given. And, finally, we think it clear that the questions asked of defendant by Officer Davis were not asked as part of any

---

[2] It was testified that, in the vernacular of narcotic traffic, "weed" means marijuana, "stick" means a marijuana cigarette, and "dirty" means that a person has some form of narcotic on his person.

preliminary investigation but were asked in order to obtain the very kind of incriminating statement that resulted.

The only element of the crime as to which further investigation could have been directed was the fact of defendant's knowledge of the narcotic nature of the objects thrown away. As to this, there was evidence that, as defendant was walking to his car, the vehicle driven by Officer Bach and his partner was seen, by others in the area, and recognized as a police car, that someone called out "Here come the cops," and that defendant was observed by Officer Davis to watch the approach of the police car. From these facts, some suspicion could have arisen that defendant, knowing that he possessed marijuana, had gotten rid of the cigarettes in fear of a police search. The facts of this case indicate the distinction between proper and improper questioning of an investigatory nature as to this (and possibly the other) elements of the crime. Officer Bach disclosed his official status and then asked the questions above quoted in what we regard as an entirely proper inquiry of defendant; they were questions which "lent themselves" to statements by defendant which could have exculpated him and have explained away the suspicion theretofore directed to him. But the activities of the officers in using the services of Officer Davis were quite another matter. They had secured, and obviously had rejected, defendant's exculpation. They then proceeded to utilize the "feigned arrest" of Officer Davis, carefully holding him out as being a suspected criminal, and Officer Davis, in turn, utilized this ruse as an opportunity to question defendant. Under these circumstances, Officer Davis was no longer investigating; he was in the accusatory stage and the response secured was inadmissible. (*People* v. *Stewart* (1965) 62 Cal. 2d 571 [43 Cal.Rptr. 201, 400 P.2d 97].)

Except for the immaterial difference between an interrogation by a feigned fellow prisoner in a police car and a similar interrogation in a jail cell, the conduct here is the same as that involved in *People* v. *Flores, ante,* p. 807 [46 Cal. Rptr. 412] today decided by this court. For reasons set forth at length in that opinion, we conclude that there is no legal difference between these cases and the conduct condemned in *Spano* v. *New York* (1959) 360 U.S. 315 [79 S.Ct. 1202, 3 L.Ed.2d 1265] and in *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246].

The judgment (order granting probation) is reversed.

Files, P. J., and Jefferson, J., concurred.