## MILLER *v.* CALIFORNIA.

No. 154. Argued March 26, 1968.—Decided June 17, 1968.

*F. Lee Bailey* argued the cause for petitioner. With him on the briefs was *Alan M. Dershowitz.*

*Philip C. Griffin,* Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *Thomas C. Lynch,* Attorney General, and *William E. James,* Assistant Attorney General.

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

MR. JUSTICE MARSHALL, with whom THE CHIEF JUSTICE, MR. JUSTICE DOUGLAS, and MR. JUSTICE BRENNAN join, dissenting.

The Court may leave this judgment standing only upon one or more of the following grounds: that there was no constitutional error in petitioner's trial; that whether or not there was error, objection to it was waived; or that the error was harmless. None of those grounds are persuasive to me, and I would reverse.

The facts of the case are as follows. A short time after midnight on October 8, 1964, petitioner's husband was killed in the conflagration of the automobile in which he and petitioner had been riding. Later that day, at about 1:30 p. m., petitioner was arrested for murder, and was taken to a county jail, where she was booked on that charge and placed in a cell. She was met at the jail by a lawyer, a family friend who had been called by

petitioner shortly after the fire. The night of her arrest petitioner spoke with a police officer for several hours at the jail, answering questions and reciting her version of what she claimed to have been an accidental fire.

In an attempt to prevent questioning of his client, petitioner's counsel set up, with his associates, a 24-hour-a-day watch of her cell. Thereafter, at about 11 p. m. on October 9, Peggy Fisk, an undercover agent in the employ of the county sheriff's office, was falsely booked into the jail on a fictitious narcotics charge and placed in petitioner's cell. Two other prisoners who had shared the cell were later removed. Fisk did not advise petitioner that she was an agent of the sheriff placed in the cell to report on anything petitioner might say. She remained alone with petitioner until October 15, giving oral reports as to their conversations from time to time to the sheriff's office; a written report was prepared on October 12 and partly on October 14.

On October 13, a complaint was filed formally charging petitioner with murder; petitioner was arraigned that day on the complaint.[1] An indictment was returned on October 20, and the complaint was then dismissed.

It was the State's theory at trial that petitioner did not love her husband; that she drugged him and then set the automobile on fire; and that she killed him in order to be free to marry one Arthwell Hayton and to collect some $100,000 in insurance proceeds. The defense theory was that the fire was of accidental, rather than incendiary, origin. The defense contended that although petitioner was in love with Hayton until her husband's death the affair between them had terminated several months earlier, petitioner had given up any thought of

---

[1] The judge on the same day issued an order prohibiting officials from questioning petitioner unless her attorney was present, and ordered her attorneys to cease sitting outside her cell. Apparently, the police did not inform the judge of Fisk's continued presence.

marrying Hayton, and had been reconciled with her husband; and that she would not be motivated to kill her husband for the insurance since he earned some $30,000 a year in his dental practice.

Fisk was called as a prosecution witness at trial and testified that petitioner told her in the cell after her arrest for murder that "she did not love her husband but she respected him"; that "she had always loved Mr. Hayton and still loves him"; that "she would receive over a hundred thousand dollars in insurance because of the accidental death"; and that "as soon as this mess was over, that she planned to take [her children] . . . away to Europe with the insurance money."

The district attorney relied upon and emphasized Fisk's testimony in his argument to the jury. See *infra*, at 628–629. After deliberating for more than three days, the jury returned a verdict that petitioner was guilty of murder in the first degree. She was later sentenced to life imprisonment.

## I.

Although the issue is not free from difficulty, it seems to me the record clearly reveals petitioner adequately raised and preserved her federal constitutional objection to Fisk's testimony. That issue arises in the following context.

Toward the close of its case in chief, the prosecution called Fisk as a witness. Petitioner's trial counsel immediately objected, before Fisk was sworn, to her testimony at that time, on the ground that he had not been given her address prior to her testifying as he had been promised. There then occurred an extended conference in the judge's chambers.

In chambers, petitioner's counsel made two objections to Fisk's testimony. He first discussed the objection raised in the presence of the jury that he had not been given the witness' address as he had been promised, so

that he might interview her. He then presented extensively the constitutional objection to any testimony at all from Fisk, discussing the circumstances giving rise to the contention and citing the relevant cases.[2] The district attorney first explained why he had been unable to provide counsel with Fisk's address and acknowledged that he had forgotten the request, which was apparently based on the fact that defense counsel had been shown, a month or so earlier, a report of the sheriff concerning the witness in which she had been identified as "Jackie Doe." He attempted to distinguish the cases cited by petitioner's counsel, and elaborated somewhat on Fisk's activities.[3]

As to the first ground of objection, the trial judge said "in view of the circumstances related that Mr. Foley [defense counsel] was promised an opportunity to talk to this witness," Fisk should be withdrawn at that time. The district attorney agreed to withdraw her. The trial judge then turned to the constitutional ground of objection. It had been clearly disclosed at the conference that Fisk spent almost a week in petitioner's cell, without disclosing her identity, and would testify concerning statements made to her by petitioner. The district attorney said he would call her as a witness the next day and stated to the judge, as to petitioner's constitutional objection: "You would have to wait and listen to

---

[2] Counsel cited by name and discussed, as did the district attorney, *Massiah* v. *United States,* 377 U. S. 201 (1964), and *People* v. *Dorado,* 62 Cal. 2d 338, 398 P. 2d 361 (1965). The latter decision, grounded on the Federal Constitution, encompasses a claim based on *Escobedo* v. *Illinois,* 378 U. S. 478 (1964).

[3] The district attorney represented that Fisk, although being with petitioner "for about a week," did not interrogate petitioner or in any way seek to elicit information from her. Although that representation was undoubtedly made in good faith at the time, it is conceded to be incorrect. See *infra,* at 626.

the voir dire on the stand and see." The following colloquy, concluding the in-chambers conference, ensued:

"The COURT: . . . [Y]ou will have the opportunity to talk to her but on the other objection, we would have to have her sworn and at least testify to the preliminary questions anyway, and have an objection made at the proper time.

"Mr. FOLEY: You know that isn't right, your Honor.

"The COURT: Unless you want me to look at this [sheriff's] report and see what she knows. Does this report indicate?

"Mr. TURNER [district attorney]: There has to be a foundation laid, an objection made. There is no way to—

"The COURT: I think there would have to be. I don't see how that could be done *in the absence of the jury*." (Emphasis added.)

The following day Fisk was called as a witness. The district attorney asked some preliminary questions. Fisk was identified as having been employed the previous October by the county sheriff as an undercover agent, and it was elicited that in the course of that employment she was assigned the task of pretending to be a prisoner in jail with petitioner, where she became acquainted and talked with her. When the district attorney asked Fisk if petitioner had discussed her "domestic problems with her husband," counsel for petitioner asked if he might "ask a question on voir dire." He elicited that Fisk had not identified herself as a police agent to petitioner, and had not advised petitioner she could have an attorney present when they talked. Direct examination was then resumed by the district attorney. Fisk then testified concerning petitioner's statements to her, see *supra*, at 618.

On cross-examination, petitioner's counsel elicited answers concerning Fisk's being placed in petitioner's cell, reporting to the sheriff, and activities in the cell (see *infra*, at 626). He also elicited that petitioner had told Fisk the fire was accidental, and, in short, a story concerning her husband's death consistent with that which petitioner had related to the police at the scene and in questioning at the jail, and consistent with petitioner's claim of innocence.

In these circumstances respondent contends that it is "obvious" that petitioner's trial counsel, following his interview with ·Fisk, made a tactical judgment that her testimony would be helpful, and therefore that the federal claim is not available to petitioner here because it was waived. I find that view unacceptable.

The District Court of Appeal clearly agreed that petitioner's federal contention based on our decisions in *Massiah* and *Escobedo* was valid. 245 Cal. App. 2d 112, 144, 53 Cal. Rptr. 720, 740. The court stated it did not reverse the conviction only because it viewed Fisk's testimony as nonprejudicial. *Ibid.* However, it went on to say that petitioner waived the point by failing to object when Fisk was called the day following the in-chambers conference, or, to put it another way, that "it is reasonable to assume that defense counsel was willing to have Peggy [Fisk] testify" in the circumstances. 245 Cal. App. 2d, at 143, 53 Cal. Rptr., at 740.[4] I think it significant to note that the Supreme Court of

---

[4] One factor recited by the court as leading it to conclude that petitioner's counsel desired Peggy Fisk's testimony was that he "received a copy of Peggy's reports to her superiors concerning her talks with defendant," and, apparently, was in a position to balance its advantages and disadvantages. 245 Cal. App. 2d, at 143, 53 Cal. Rptr., at 740. The record does not reveal that sheriff's report, but it does show that counsel had seen it prior to objecting strenuously at the in-chambers conference to Fisk's testifying.

California specifically disapproved the language of the District Court of Appeal in this case with respect to waiver of objections to admission of evidence obtained in violation of *"Escobedo-Dorado"* by a mere failure to object, see *People* v. *Doherty,* 67 Cal. 2d 9, 14, 429 P. 2d 177, 180 (1967), and in the same decision cast considerable doubt on the approach of the District Court of Appeal in this case toward presuming or assuming that the failure to object was a considered trial stratagem.[5]

In any event, this Court has long held that a waiver of a federal constitutional right is not lightly to be presumed. See, *e. g., Johnson* v. *Zerbst,* 304 U. S. 458 (1938). In this case counsel clearly apprised the trial court of the basis of his objection, and indeed he cited the specific decisions that clearly supported the claim. Surely there was no bypassing of the state courts on the issue.

Concerning the failure to renew the objection, I note that the trial judge appears clearly to have required petitioner to raise the issue anew in front of the jury and after preliminary questions had been asked of Fisk. On this record those preliminary questions clearly identified her as having engaged in conversations with petitioner as an undercover agent in the jail pretending to be a fellow prisoner. As petitioner's trial counsel said in a motion for a new trial: "The defendant was then placed in the unfortunate position of being forced to object in front of the jury. If the objection were sustained, the jury might well . . . infer that through a technicality the defendant had managed to keep out of evidence a full confession."

---

[5] In the *Doherty* case, the California Supreme Court said, in a situation where counsel might develop facts upon which an objection could be based but did not object (in relation to that court's *Dorado* decision), not that it would assume waiver of the point, but rather that "[i]f the People should sustain the burden of establishing the fact of such tactics, we would treat defendant's stratagem as a waiver of the objection." 67 Cal. 2d, at 14, n. 4, 429 P. 2d, at 180, n. 4.

Thus the most that can be said on this record is that trial counsel—having previously raised the objection—preferred to have Fisk's testimony admitted rather than objecting to it in the presence of the jury after Fisk had been identified. Cf. *Jackson* v. *Denno*, 378 U. S. 368 (1964); *People* v. *Schader*, 62 Cal. 2d 716, 727–728, 401 P. 2d 665, 672 (1965). Placing a defendant in that kind of a dilemma with respect to renewing a federal constitutional objection serves no valid purpose. *Douglas* v. *Alabama,* 380 U. S. 415, 422 (1965). And while respondent indicates here that California law permits a defendant to object to the admission of evidence and establish a basis for the objection outside the presence of the jury (citing *Schader, supra*), that was neither the import of the trial judge's ruling in this case nor the view of the district attorney at this trial (see *supra,* at 619–620).

Since the record reveals the trial court and the prosecution were clearly apprised of the constitutional claim, since the state court at least alternatively passed upon the validity of that claim, and since it cannot be said on the record that the failure to renew the objection was anything more than a decision reflecting the trial judge's ruling that the objection be voiced before the jury, I should think it perfectly clear that the issue was adequately preserved.[6]

## II.

Notwithstanding that respondent's own courts viewed Fisk's placement and activities in petitioner's cell as unconstitutional, respondent here attempts to defend the sheriff's action on two grounds, both of which are patently without substance.

Respondent contends that petitioner's constitutional rights were not violated, because Fisk was placed in the

---

[6] Cf. *Fay* v. *Noia,* 372 U. S. 391, 438–440 (1963). Compare *Henry* v. *Mississippi,* 379 U. S. 443 (1965).

cell prior to any formal charge being filed against petitioner. To be sure, it is emphasized in *Massiah* v. *United States,* 377 U. S. 201, 204–206 (1964), that the defendant there had been indicted and that an indictment marks a point at which the formal adversary process begins. Thus, the Court held that statements obtained on behalf of the prosecution by a co-conspirator of the defendant during conversations in the former's automobile, violated the defendant's Sixth Amendment right to counsel [7] since he had been indicted and was already represented by counsel. At the same Term, the failure to honor the right to counsel was recognized at an earlier stage in respect to interrogations, namely, when, among other things, "the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect . . . ." *Escobedo* v. *Illinois,* 378 U. S. 478, 490 (1964). That language applies here. Petitioner had been arrested and booked for murder. Clearly, given the circumstances of the fire, if a crime had been committed, petitioner had done it. In practical effect the criminal proceedings had begun, for it is clear from the arrest, from petitioner's initial questioning, and from the decision to use Fisk that the sheriff's office had ceased merely a general inquiry into the cause of the fire.[8]

Indeed, in one respect at least, this is a clearer case than *Massiah:* unlike the defendant there, who had been released on bail, petitioner was in custody without bail, with a consequent lack of freedom to choose her companions. And petitioner, like the defendants in *Massiah* and *Escobedo,* was represented by counsel at all times. Moreover, a formal complaint charging petitioner with

---

[7] At the same Term, *Massiah* was applied to vacate a state judgment affirming a conviction. *McLeod* v. *Ohio,* 378 U. S. 582 (1964). See also *McLeod* v. *Ohio,* 381 U. S. 356 (1965).

[8] Cf. *Hoffa* v. *United States,* 385 U. S. 293, 309–310 (1966).

murder was filed on October 13, and Fisk remained in petitioner's cell, eliciting information or conversing with petitioner until October 15.[9]

Both state courts, see, e. g., People v. Flores, 236 Cal. App. 2d 807, 46 Cal. Rptr. 412 (1965), cert. denied, 384 U. S. 1010 (1966) (jail cell plant); People v. Ludlum, 236 Cal. App. 2d 813, 46 Cal. Rptr. 375 (1965), and lower federal courts, see, e. g., Clifton v. United States, 341 F. 2d 649 (C. A. 5th Cir. 1965), have held that the right to counsel as interpreted in Massiah and Escobedo bars the admission of statements obtained at some pre-indictment point, at least when the accusatory stage has been reached and the police have clearly focused upon the subject.[10] However that stage be defined, it was clearly reached here.

Respondent also contends that petitioner's constitutional rights were not violated, because Fisk engaged in no "process of interrogations," Escobedo v. Illinois, 378 U. S., at 491, designed to obtain a confession from petitioner, or that statements from her had not been "deliberately elicited," Massiah v. United States, 377 U. S., at 206. In the State's view, so long as Fisk acted simply as a listening post, she could testify as to any statements made to her by petitioner. That view was, however, rejected in Massiah itself. The Government in that case pointed to the fact that the record did not reveal that its agent had induced the defendant by persuasion (there based on friendship) to discuss his activities, and urged that "providing a defendant an opportunity to talk" [11] did not violate his right to counsel. See also Beatty v.

---

[9] See n. 12, infra.

[10] Cf. People v. Robinson, 16 App. Div. 2d 184, 224 N. Y. S. 2d 705 (4th Dept. 1962) (jail cell plant). See also Note, 79 Harv. L. Rev. 935, 1006 (1966).

[11] Brief for the United States, Massiah v. United States, No. 199, October Term, 1963, at 30.

*United States,* 389 U. S. 45 (1967), reversing 377 F. 2d 181 (C. A. 5th Cir.).

At all events, Fisk was not put in the cell to discuss the weather, to console petitioner, or merely to provide her with companionship. Her presence itself was an inducement to speak, and an inducement by a police agent. While petitioner's statements to her were not obtained by coercive means, they certainly were not given, in light of the deception, through a knowing and intelligent waiver of petitioner's rights.

Furthermore, it is clear on this record that Fisk was planted in petitioner's cell in order to subvert her right to counsel, with the express purpose of attempting to obtain evidence out of her mouth. On one occasion, Fisk was given a newspaper clipping concerning the case and was told to show it to petitioner, which she did with some accompanying statement, such as the press is "ruining you." On another occasion, pursuant to instructions, Fisk told petitioner of a conversation that she had supposedly overheard in a hall between four men whom she thought were from the district attorney's office, in which one of the men, as the ruse went, said: "Getting back to the Miller case, Arthwell Hayton came in and blew the top off the case." Fisk also told petitioner "I put all my trust in Mr. Bland [the sheriff] and maybe it would do some good for you if you tried the same." Finally, Fisk said that she had at one time been represented by an attorney who "did not do me much good" and indicated that perhaps petitioner should suspect hers.[12]

---

[12] Respondent also argues that petitioner did not show that any of her statements as related by Fisk occurred prior to the filing of a formal charge on October 13, or were specifically prompted by the four incidents of deliberate inducements to speak related in the text above. Of course petitioner has no such burden in the circumstances of this case. Besides, petitioner's counsel asked Fisk, for example, "which day was it that she [petitioner] mentioned insur-

Such deliberate police deception and subversion of a defendant's rights should not be condoned. The District Court of Appeal said in this case:

> "It is almost incredible that in these days of enlightened treatment by prosecution authorities of persons charged with crime, the Peggy Fisk incident could have occurred. . . .
>
> .        .        .        .        .
>
> "The trick attempted by the authorities in which they apparently hoped to obtain incriminating statements from defendant and to get her to throw herself on the alleged mercy of the sheriff and to suspect her own attorney was completely indefensible . . . ." (245 Cal. App. 2d, at 141, 143–144, 53 Cal. Rptr., at 738, 740.[13])

I agree, and I would not leave standing a judgment reflecting such an egregious violation of *Massiah* and *Escobedo*.[14]

### III.

Having concluded that petitioner properly preserved her federal constitutional objection to the admission of Fisk's testimony, and that its admission did indeed violate her constitutional rights, I turn to respondent's contention that the error was "harmless beyond a reason-

---

ance money to you, 9th, 10th, 11th, 12th, 13th or 14th?" Fisk was unable to answer. Moreover, assuming all the statements were made on the first day of Fisk's deceptive presence in the cell, I would reach the same result.

[13] In addition to the other cited cases (see *supra*, at 625) in which the admission of testimony by jail cell undercover agents was held to be unconstitutional, see *People* v. *Arguello*, 63 Cal. 2d 566, 407 P. 2d 661 (1965).

[14] Petitioner's trial, which began on January 11, 1965, was prior to the effective date of *Miranda* v. *Arizona*, 384 U. S. 436 (1966), and therefore that decision is not applicable. See *Johnson* v. *New Jersey*, 384 U. S. 719, 734 (1966).

able doubt," *Chapman* v. *California*, 386 U. S. 18, 24 (1967). *Chapman* was decided after the decision of the California District Court of Appeal now on review here, and normally a remand would be in order so that the state court might reconsider, in light of that case, its conclusion that the error was harmless. However, since a majority of the Court refuses to decide this case at all, I wish to point out why I cannot regard the error as harmless.

I have already indicated generally the theories of the prosecution and defense as to Dr. Miller's death (see *supra*, at 617–618). The evidence against petitioner was circumstantial.[15] So saying, I do not imply it was necessarily in any sense weak; that fact does, however, help to indicate why the issue of motive was particularly crucial, and one which was central to the trial. Fisk's testimony definitely supported the State's case on that issue. Petitioner testified that she loved Hayton until "the minute that Cork [Dr. Miller] was gone," but that she had given up any idea of marrying Hayton as of the time of an incident that occurred approximately three months prior to her husband's death. As to that testimony, the district attorney argued to the jury:

> "But that's not what she told the girl [Fisk] up in jail. She told the girl up in jail that she still loved Hayton, felt that he would come to her."

On rebuttal argument, the district attorney again emphasized Fisk's testimony:

> "He [defense counsel] says the prosecution's case is based entirely on surmise and conjecture. That's not true.

> .      .      .      .      .

---

[15] See *Fontaine* v. *California*, 390 U. S. 593; cf. *Anderson* v. *Nelson*, 390 U. S. 523.

. "Is it surmise and conjecture that Mrs. Miller had been infatuated with Hayton and wanted to marry him?

"There is disagreement as to when this wanting to marry him stopped, but there is no question at all that she wanted to marry him.

. . . . .

"Is it surmise and conjecture that she told the girl up in jail she still loved Hayton and did not love her husband?

. . . . .

"And, of course, right after her husband's death she is arrested and is in custody, and she tells the girl upstairs that she still loves Hayton."

To be sure, for almost each point upon which Fisk's testimony was emphasized there was other supporting evidence. But this Court has always viewed evidence out of a defendant's own mouth, obtained after the events, as particularly weighty with the jury. See *Bram* v. *United States,* 168 U. S. 532 (1897); *Jackson* v. *Denno,* 378 U. S. 368 (1964). And, as the quotations above indicate, that was plainly the view of the district attorney in this case. Certainly Fisk's testimony, if believed, made the prosecution's case much more credible, and undermined petitioner's defense.

Moreover, the jury deliberated three days before reaching a verdict. It may have spent that time assessing the expert testimony in regard to the causes of fires in automobiles, weighing the prosecution's experts' testimony that this fire was of incendiary origin against the testimony of an expert for the defense, who said the fire might well have been accidental. It may have found all that time necessary to resolve the question of guilt or innocence. Or, since it was charged on both first- and second-degree murder, it might have spent that time weighing

not guilt and innocence but degree of guilt, even though only the former would have been consistent with the prosecution's theory. Fisk's testimony may have been particularly important with respect to the jury's resolution of that matter. While of course one cannot know definitely what occupied the jury's time during the three days it deliberated, I am convinced it cannot be said "beyond a reasonable doubt," *Chapman* v. *California, supra,* that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy* v. *Connecticut,* 375 U. S. 85, 86–87 (1963). I would therefore reverse petitioner's conviction.