**UNITED STATES of America ex rel. Samuel CHABONIAN, Petitioner,**

v.

**Russel LIEK, Director of the Walworth Correctional Center, Respondent.**

**Civ. A. No. 71-C-637.**

United States District Court,
E. D. Wisconsin.

Nov. 16, 1973.

William M. Coffey, Milwaukee, Wis., for petitioner.

William A. Platz, Asst. Atty. Gen., Madison, Wis. and Hector De La Mora, Asst. Dist. Atty., Milwaukee, Wis., for respondent.

## OPINION AND ORDER

JOHN W. REYNOLDS, Chief Judge.

Samuel Chabonian, an inmate at the Walworth Correctional Center, Walworth, Wisconsin, has petitioned this court for a writ of habeas corpus pursuant to Title 28 U.S.C. § 2241 et seq. A response thereto was ordered, and a traverse has been filed.

On March 14, 1968, the petitioner was found guilty of receiving and having in his possession stolen property, in violation of § 943.34, Wis.Stats. He was then sentenced to an indeterminate term of not more than three years in the Wisconsin state prison. Petitioner has exhausted his state remedies pursuant to the requirements of 28 U.S.C. § 2254 by filing in the trial court postconviction motions for judgment of acquittal notwithstanding the court's verdict or, in the alternative, for a new trial. These motions were subsequently denied on the orders of the Circuit Court of Milwaukee County with an opinion by the Honorable Robert F. Pfiffner, Circuit Judge. The denial of these motions was appealed to the Wisconsin Supreme Court, which affirmed the decision of the trial court, in handing down the decision of State v. Chabonian, 50 Wis.2d 574, 185 N.W.2d 289 (1971). The grounds raised in this petition are the same as those raised before both the trial court and the Wisconsin Supreme Court.

The crux of petitioner's claim for issuance of a writ of habeas corpus is that at his trial the prosecution introduced into evidence a statement made by the petitioner which was allegedly made by him after he had been arrested, outside the presence of his retained counsel, without his having waived the right to counsel, and after a police officer had made an "implied threat" to him.

The absence of any allegation that the petitioner did not receive a full and fair evidentiary hearing at the state court level and the fact that the parties have stipulated that there is no factual dispute * make an evidentiary hearing unnecessary.

The facts out of which petitioner's conviction arose and the grounds upon

---

* The pleadings indicate that petitioner is in the custody of Russel Liek, Director of the Walworth Correctional Center. The court, however, has since been informed by counsel for the petitioner that he is out on parole and in the custody of the State of Wisconsin Department of Health and Social Services, Department of Probation and Parole.

which his petition for habeas corpus is based bear restating. On October 14, 1967, the petitioner was arrested in Hartford, Wisconsin, because he was in possession of a stolen 1967 Mercury Cougar automobile. He was subsequently turned over to the Milwaukee Police Department and charged with receiving and having in his possession stolen property, contrary to § 943.34, Wis.Stats.

The facts further show that on September 23, 1967, a 1967 Mercury Cougar automobile was stolen in Milwaukee, Wisconsin. On October 14, 1967, the defendant was stopped by a police officer when he was driving said automobile in Hartford, Wisconsin. The officer requested the defendant to accompany him to the Hartford police station where the officer phoned the Milwaukee detective bureau. On the same day, Milwaukee Detective Buxbaum came to Hartford, verified that the car was the stolen automobile, and informed the defendant of his constitutional rights. Defendant made certain statements to the detective, largely exculpatory, and Buxbaum took the defendant back to Milwaukee "to write him up," and there again informed defendant of his constitutional rights. After being advised of his constitutional rights a third time, defendant indicated that he wanted to call his attorney and did contact him. Subsequently, the defendant stated, as he had earlier, that he had purchased the car from one Richard Tuszkiewicz, had a bill of sale to it, and denied knowing that the car was stolen. Detective Buxbaum testified that defendant said that he had painted the car red, put different racing-type tires on the rear wheels, and removed a hood ornament which was the figure of a horse. Subsequently, Milwaukee Detective Daniels again informed defendant of his constitutional rights. Defendant told Daniels substantially what he had earlier told Buxbaum. The admissibility of these statements was not at issue at the state court level and is not at issue here.

The statement of the defendant around which the dispute centers was found by the trial court to have been voluntarily made to Detective Daniels while two detectives, the defendant, defendant's father, defendant's attorney, State's witness Tuszkiewicz, and his attorney (seven persons in all) were proceeding on the fourth floor of the Safety Building between the district attorney's office and the office of the issuing magistrate. Several trips between the two offices were made, and it appears that the group wandered back and forth so that all in the group of seven were not within earshot of each other. Detective Daniels, it appears, remarked to the father of the defendant on one such trip that " * * * he should talk to his son because his son was on probation now and if he didn't tell the truth, he was going to be hurt by it * * *." On one of the back-and-forth walks in the fourth floor corridor, the trial court found that the defendant admitted to Detective Daniels " * * * that he knew the automobile was stolen when he bought it from Tuszkiewicz." Consequently, proceedings were commenced against the petitioner by the issuance of a complaint and warrant on October 17, 1967. None of the other people in the vicinity heard the statement in question, and petitioner never repeated it to anyone else.

At his trial, petitioner took the stand in his own defense and denied knowledge that the car was stolen when he purchased it from Tuszkiewicz, and denied admitting that he knew the car was stolen when it was purchased by him. Defendant testified that Tuszkiewicz assisted him in painting the car another color and that he never saw the horse-shaped ornament on the car. He testified that he had put improper, illegal plates on the car. As a state witness, Tuszkiewicz testified that he did not sell the car to the defendant but that he did help paint the car a different color.

The court found the defendant guilty and on March 14, 1968, sentenced him to an indeterminate term of not more than three years in the Wisconsin state prison.

In addition to the judgment of conviction and sentence herein attacked, the petitioner received an indeterminate sentence of not more than four years, to be served concurrently with the three-year sentence herein attacked, for a burglary to which he pleaded guilty on April 24, 1967, in the Circuit Court of Milwaukee County. With reference to the burglary charge, on May 24, 1967, the Honorable John L. Coffey, Circuit Judge, placed the petitioner on probation for a period of three years. On or about June 29, 1971, after a hearing, the petitioner's probation was revoked, and he was sentenced by Judge Coffey to the above-mentioned term of not more than four years. Petitioner has filed a petition for writ of habeas corpus attacking the judgment and sentence in that case. Said petition is presently pending in this court in civil action No. 73–C–129.

■ The petition for writ of habeas corpus is granted. Petitioner seeks to be discharged from custody on essentially three grounds—first, that there is no evidence that the petitioner waived his right to have his retained counsel present; second, that there is no evidence that his statement was voluntarily made; and third, that petitioner's sixth amendment right to counsel was violated. If petitioner is correct in any of his allegations, I must rule that the incriminating statement allegedly made by him to Officer Daniels was erroneously received in evidence. I agree with all three of petitioner's allegations. In so doing, I realize that I am disagreeing with the four members of the Wisconsin Supreme Court who wrote the majority opinion in State v. Chabonian, supra. I have been swayed, however, by several decisions made by the Seventh Circuit subsequent to the Wisconsin Supreme Court's decision in *Chabonian*; see United States v. Jenkins, 440 F.2d 574 (7th Cir. 1971), and United States v. Durham, 475 F.2d 208 (7th Cir. 1973). In addition, I interpret differently than the Wisconsin Supreme Court several important decisions rendered by the United States Supreme Court.

I.

■ The United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 444–445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), makes it quite clear that once the accused indicates in any manner that he wishes to see an attorney before responding, there can be no further "in custody" questioning. In *Miranda*, Chief Justice Warren emphasizes that an individual does not have to make a preinterrogation request for counsel, and that such failure to ask for counsel does not constitute a waiver. 384 U.S. at 470, 86 S.Ct. 1602, 16 L.Ed.2d 694. In addition, he explicitly states:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, [84 S.Ct. 1758, 1764, 12 L.Ed.2d 977.] This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938), and we re-assert these standards as applied to in-custody interrogation. * * *

* * *

"* * * a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. * * * *" 384 U.S. at 475, 86 S. Ct. at 1628.

Here there is little evidence presented by the State indicating that petitioner waived his right to have his retained counsel present when he made the statement to Officer Daniels. The State simply places great weight on the fact that petitioner was given the *Miranda* warning on three different occasions. This, however, does apply to the matter of waiver.

76

The State's allegation that the petitioner's attorney appears to have permitted the conversation between the Chabonians and Officer Daniels to go on unimpeded in no way constitutes a waiver on the part of petitioner. Nor should the State be able to shift their "heavy burden" to the petitioner by alleging that "[i]n the absence of any colorable allegation that the admission was involuntary or the product of overreaching by the police, or that the proper warnings were not given, it would appear that defendant waived his right to have an attorney present." (Respondent's brief titled in Wis.Sup.Ct., p. 7.) The theory that since the petitioner made the alleged statement outside the presence of his attorney and that he therefore must have somewhere or somehow waived his right to counsel is invalid. In the absence of other facts, the conclusion simply does not follow. The facts, as presented, lend no credence to any of the State's theories. They simply show that the petitioner asked to talk to his attorney, made several exculpatory statements to the interrogating police officers, and then, during a trip between the district attorney's office and the office of the issuing magistrate, made the alleged incriminating statement. Additionally, they disclose that the petitioner never signed a waiver form, never repeated the statement in the presence of anyone else, and even subsequently denied having ever made the admission. The case of United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968), although involving the refusal to sign a waiver form, is similar to the circumstances which exist here. The court stated:

"* * * the agents should have inquired further of [defendant] before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion." 392 F.2d at 853.

Subsequently, in United States v. Jenkins, 440 F.2d 574 (7th Cir. 1971), the Seventh Circuit, relying heavily on the language of Nielsen, held that since the record was devoid of any evidence showing that the defendant's answers to the agent's questions were followed by a voluntary and intelligent, although unwritten, waiver by the defendant, the statement was not admissible. Such decisions as these persuade me that here the State has also not met the "heavy burden" imposed on it by Miranda to show that the petitioner "knowingly and intelligently" waived his fifth and sixth amendment rights. Officer Daniels should have questioned petitioner further in an effort to determine whether petitioner's apparent change of position from his prior refusals to incriminate himself was the product of intelligence and understanding or in response to the "implied threat" that he would be "hurt" if he did not tell the truth. Such failure by the interrogating officer is fatal here.

II.

The admissibility of confessions has historically been discussed in terms of the "voluntariness" of the confession or statement. The emphasis was on the exclusion of confessions procured by means which, by their nature, cast doubt on the trustworthiness of the statements in question. The primary concern was the protection of innocent persons who might have been coerced, cajoled, or tricked into making a false confession. Recently, however, the emphasis has changed. The Supreme Court continues to use the terms "voluntariness" and "coercion" but has shifted its concern from not only the trustworthiness of the confession but to the propriety of the police conduct. The focus of the Court has thus been broadened from protecting the innocent from the possibility of a false confession to protecting the guilty from unfair methods of procuring statements from them.

Consequently, the Supreme Court has over the years set down more and more stringent standards of admissibility of confessions. The first Supreme Court case, Brown v. Mississippi, 297 U.S. 278,

56 S.Ct. 461, 80 L.Ed. 682 (1936), forbidding the use of a confession in the state courts, involved the brutal and sadistic torture of a prisoner. Recent cases have moved far from its starting point to exclude confessions obtained primarily by deception. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954); Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), the Court even went so far as to seek a technique for preventing police coercion or at least to provide a procedure by which the reviewing court could avail itself of what occurred during the interrogation of the accused. See 384 U.S. at 467–479, 86 S.Ct. 1602, 16 L.Ed. 2d 694. The Court was well aware of many of the techniques used by the police to procure information from the accused. See 384 U.S. at 470, 86 S.Ct. 1602, 16 L.Ed.2d 694. Nevertheless, in its decision, the majority of the Supreme Court did not purport to find all confessions inadmissible; rather, it stated:

"* * * Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * * There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. * * *" 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d 694.

▪ The examples of "volunteered" statements listed by the Court in *Miranda* are all initiated by the defendant and are all spontaneous and unsolicited. Here, the facts disclose that petitioner's statement was part of a "conversation" with Officer Daniels, and in response to a statement made to the petitioner and his father that petitioner had better tell the truth because he was on probation and he could be hurt. At the time that petitioner made the statement, Officer Daniels knew that petitioner's counsel was in the area, but no attempt was made to get plaintiff to either repeat the statement in the presence of his attorney or to sign a waiver of counsel. The facts ultimately show that the petitioner denied having ever made the statement, and that petitioner's father, who was the closest to Officer Daniels and the petitioner, should have heard everything according to Officer Daniels but denies ever having heard the statement. These facts, taken together, not only indicate that the admission was not "volunteered" but lead one in the opposite direction. I am therefore compelled to rule that the petitioner's statement was not spontaneous and unsolicited. It was actively sought after by Officer Daniels. Therefore, it was not "voluntary" under the test imposed by Miranda v. Arizona, supra.

### III.

In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the use of an undercover agent to elicit further incriminating information from a man after he has been indicted and is represented by counsel was forbidden. In *Massiah* the defendant was indicted for violating the federal narcotics laws. He retained legal counsel, pleaded not guilty, and was subsequently released on bail. At or about the same time, a similarly charged individual named Colson decided to cooperate with the government agents in their investigation. Agreeing to the placement of a listening device under the front seat of his car, he ultimately engaged the defendant in a lengthy conversation while sitting in his automobile. Statements made were picked up by a receiving device from which another agent could hear all that was said. At defendant's trial, several incriminating statements were admitted into evidence, and the defendant was convicted of various narcotics offenses. The Supreme

Court of the United States, in reversing the defendant's conviction, stated:

"Here we deal * *. * with a federal case, where the specific guarantee of the Sixth Amendment directly applies. Johnson v. Zerbst, 304 U. S. 458, [58 S.Ct. 1019, 82 L.Ed. 1461]. We hold that the petitioner was denied the basic · protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. * * * " 377 U.S. at 205–206, 84 S. Ct. at 1203, 12 L.Ed.2d 246.

Subsequent to *Massiah,* several courts gave the opinion a narrow construction and held that it applied only when the accused has been tricked or misled into confessing in the absence of his attorney. See, for example, Davis v. State, 33 Wis.2d 682, 684, 148 N.W.2d 53 (1967). The rationale for thus holding *Massiah* to its facts was the last sentence of the opinion:

"All that we hold is that the defendant's own incriminating statements, obtained by federal agents *under the circumstances here disclosed* (emphasis added), could not constitutionally be used by the prosecution as evidence against *him* at his trial." 377 U.S. at 207, 84 S.Ct. 1199 at 1203, 12 L.Ed.2d 246.

McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), laid this debate to rest when the Supreme Court summarily, without opinion, reversed on the authority of *Massiah* a conviction based upon an admission volunteered by a prisoner after his indictment. In *Mc-Leod* the statements in question were made by defendant when he was helping the police look for a gun used in a robbery. No deception or trickery was used in procuring these statements. A concise summary of this court's feeling about the relationship of *McLeod* to *Massiah* is provided in the First Circuit's opinion of Hancock v. White, 378 F.2d 479, 482 (1st Cir. 1967):

"The action of the Court in McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), reversing State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.Ed.2d 349 (1964), on *Massiah,* however, shows that the *Massiah* rule is not limited to *Massiah* 'circumstances' but applies to exclude post-indictment incriminating statements of an accused to government agents in the absence of counsel even when not deliberately elicited by interrogation or induced by misapprehension engendered by trickery or deception. And the case at bar is indistinguishable from *McLeod* on the facts for it is clear that White's statements were not procured by interrogation but were volunteered, and he was not imposed upon by any false statements, trickery, chicancery or subterfuge. Thus the Court's final action in *McLeod* establishes that although it had said in *Massiah* that it was only holding constitutionally inadmissible the statements of an accused 'under the circumstances here disclosed,' nevertheless, as the dissenting justices predicted the rule of that case also applies more broadly to cases involving neither interrogation nor any form of deceit or deception."

See also the decision of the Third Circuit in United States ex rel. O'Connor v. New Jersey, 405 F.2d 632 (3rd Cir. 1969).

In addition to *McLeod,* a dissenting opinion by four members of the United States Supreme Court in Miller v. California, 392 U.S. 616, 88 S.Ct. 2258, 20 L.Ed.2d 1332 (1968), indicates the likelihood that the principle enunciated in *Massiah* is not limited to postindictment information gathering. This is a matter of importance to the petitioner here because his alleged statement to Officer Daniels was made sometime between the moment of his arrest (October 14, 1967) and the commencement of legal proceedings against him (October 17, 1967). In *Miller* the defendant was arrested and booked on · charges of murder shortly after her husband had died in a confla-

gration of the automobile in which she and her husband had been riding. Shortly after her arrest, an undercover agent was falsely booked into the jail and placed in the defendant's cell. At the trial, the agent testified as to several admissions made by the defendant while they were both together in the cell. The California District Court of Appeals, at 245 Cal.App.2d 112, 144, 53 Cal.Rptr. 720, 740, agreed with the petitioner's federal contention which she founded on the decisions of *Massiah* and *Escobedo*. Nevertheless, the court held that this did not compel a reversal of petitioner's conviction because (1) the undercover agent's testimony was nonprejudicial, and (2) defense. counsel waived the issue by not objecting to the testimony during the trial.

The United States Supreme Court granted certiorari but subsequently dismissed the writ as being improvidently granted. Four members of the Court dissented. These justices found that petitioner had properly preserved her federal constitutional objection to the admission of the testimony, and that on the basis of Massiah v. United States, supra, its admission clearly violated her constitutional rights. Concerning the allegation that petitioner's rights were not violated because the admissions were made before any formal charge had been filed, the Court returned to the language of *Massiah* and *Escobedo*. In *Massiah* the defendant had been indicted, and it was emphasized that an indictment marks a point at which the formal adversary process begins. 377 U.S. 201, 204–206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In *Escobedo* the Court recognized that the constitutional right to counsel must be afforded at an earlier stage, specifically if the purpose of the interrogation has changed from "a general inquiry into an unsolved crime" to a "focus on a particular suspect." 378 U. S. 478, 490, 84 S.Ct. 1758, 1765, 12 L. Ed.2d 977 (1964). In Miller .v. California, supra, the Supreme Court found the language of *Escobedo* persuasive and ap-

plied it to petitioner's situation. The Court stated:

"  * * *  Petitioner had been arrested and booked for murder. Clearly, given the circumstances of the fire, if a crime had been committed, petitioner had done it. In practical effect the criminal proceedings had begun, for it is clear from the arrest, from petitioner's initial questioning, and from the decision to use [the undercover agent] that the sheriff's office had ceased merely a general inquiry into the cause of the fire." 392 U.S. at 624, 88 S.Ct. 2258 at 2265, 30 L. Ed.2d 1332.

See also Beatty v. United States, 389 U. S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967).

The Seventh Circuit in United States v. Durham, 475 F.2d 208 (7th Cir. 1973), recently split three ways on the applicability of *Massiah* to custodial statements taken from an unindicted defendant who had counsel. In *Durham* the defendant, charged with armed robbery, allegedly confessed to the crime during an interview with an F.B.I. agent. He was subsequently indicted and found guilty on the basis of his confession. Defendant had been represented by counsel, but his counsel was not present when the statement was procured. Defendant had been previously given a *Miranda* warning, and at his trial, he denied having ever made the alleged statement. Chief Judge Swygert, author of the lead opinion, found that the statement obtained from the defendant in the absence of legal counsel deprived him of his sixth amendment right to counsel. He stated:

"The  * * *  question is whether *Massiah* is limited to post-indictment statements or whether it includes statements obtained after arrest and preliminary hearing. I read *Massiah* to bar the admissibility of the statements obtained here since the Government had initiated 'adversary judicial

criminal proceedings' against Durham prior to the time the statements were obtained. *Cf.* Kirby v. Illinois, 406 U.S. 682, 688, [92 S.Ct. 1877, 32 L. Ed.2d 411] * * * (1972). * * * " 475 F.2d at 210–211.

Judge Pell, whose vote determined the disposition of the case, dissented "[t]o the extent that the opinion of Chief Judge Swygert rests upon a *per se* rule that would exclude confessions when counsel is not notified of or present at the interrogation * * *." 475 F.2d at 212. He, however, ruled that since the defendant may willingly and knowingly waive the right to have counsel present at the interrogation, the case should be remanded for determination of whether the defendant understandably waived his right to counsel. Judge Castle dissented, contending that a remand was unnecessary since it was clear that defendant had knowingly waived his right to counsel.

Samuel Chabonian, like Anthony Durham, made his alleged confession before charges had been brought. His alleged statement came after he had been arrested, had been conveyed from Hartford to Milwaukee, had been notified of his legal rights on several occasions, had exercised his right to legal counsel, and had been subjected to several interrogations. It seems quite clear that the purpose of the police actions was not to generally inquire about an unresolved crime but was focused on specifically questioning a particular subject about an identified crime. This signifies that the State had already initiated "adversary judicial criminal proceedings" against Chabonian. See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964), and the lead opinion of Chief Judge Swygert in United States v. Durham, supra. See also Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (1972).

■ The State had the right, and indeed the duty, to continue its investigation of the crime subsequent to Chabonian's arrest. It could not, on the other hand, procure or entice a confession from him after he had exercised his right to counsel. Once counsel had been retained, any attempts by the police or their agents to elicit information from Chabonian were prohibited, and any incriminating admissions obtained by them could not be used at trial. This is not to say that Chabonian could not have made a clear and explicit waiver of the right to have his counsel present or that he could not have voluntarily initiated a spontaneous and unsolicited confession on his own.

Here, such facts were not shown. The State admitted that the alleged confession was made in response to a statement that since Chabonian was on probation he should tell the truth or he could be "hurt" by it. While this might not have been an "interrogation" in the strictest sense of the word, it is clear that the purpose of the statement was to elicit a response from the petitioner. Under my reading of *Massiah, Escobedo*, and subsequent cases, admission of any statements made by the petitioner should have been excluded by the trial court.

■ The sixth amendment right to counsel is an important matter. Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1965); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). So is the waiver of that right. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The burden placed on the State to show waiver of that right, or to say that a statement was voluntarily made, is rightfully a heavy one. Here, the State has not satisfied that burden. Therefore, I am required to grant petitioner's request for a writ of habeas corpus.