QUINN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 23. Argued January 8, 1971.—Decided February 2, 1971.*

(Also reported in 183 N. W. 2d 64.)

---

\* See ante, p. 96, involving same defendant convicted of another offense of armed robbery.

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Lee Edward Wells,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J.  Here the primary targets of principal attack are the period of detention, fairness of the lineup, waiver of counsel, adequacy of the warning against self-incrimination and the weight to be given a positive, in-court identification of the defendant by the victim of the crime. Each will be considered in its turn.

*Period of detention.*

The defendant was arrested by the Milwaukee police on March 14, 1968, at 7:20 a. m. He was taken to the detective bureau, Safety Building, arriving there at 8 a. m. In the first hour after his arrival at the Safety Building, defendant confessed to committing eight armed robberies, including the holdup here involved. At 11 a. m., defendant was taken before Magistrate John J. Kenney, and a warrant was issued for an armed robbery other than the charge here at issue. Between 5 and 5:30 p. m., the defendant gave additional oral and written statements. An additional oral statement admitting guilt on this charge was given by defendant,

at 9:45 p. m., immediately prior to a lineup at which he was identified by an eyewitness to the supermarket holdup here involved. On the following morning, on March 15, 1968, the defendant was taken to court and bail was set.

Under these facts, and given these special circumstances, do we have here a period of unreasonable detention? If so, statements made by the defendant during the portion of such period of detention held to be unreasonable would not be admissible, even though voluntarily given,[1] and even if exculpatory in nature.[2] We hold the period of time elapsing between arrest and appearance in court on this charge not to be unreasonable in the light of the special circumstances involved. Here, during the first thirty minutes of his detention, the defendant confessed not to the commission of one crime, but to the commission of eight armed robberies. This gave the interrogating officers not one situation or charge to be concerned with, but eight. Proper and prudent police procedure required an investigation as to all eight incidents, and the facts and circumstances of each. Each case had to be investigated in turn, sequentially, one after the other. On the morning of the arrest, the police did bring the defendant before a magistrate on a charge other than that presently in issue. The defendant appears to be contending that he should have been brought to court that day on all crimes, not just one. Any such expectation was unreasonable. The defendant cannot start an avalanche by a wholesale admission of various crimes and then complain that it took a longer time for the police to sort out and pick up the various rocks he loosed. Rather he was required to expect that all charges could not be simultaneously investigated nor processed with equal dispatch. The test is what was reasonable under the

[1] *Phillips v. State* (1966), 29 Wis. 2d 521, 139 N. W. 2d 41.
[2] *Liphford v. State* (1969), 43 Wis. 2d 367, 168 N. W. 2d 549.

circumstances and that test was here met. During the period of investigation of the eight robbery cases, interrogation of the defendant took place only during two separate periods of time, and the first of these, during which the confessions were initially made, was during the first thirty minutes after arrest. Even repetition of such postarrest admissions during a later period of unreasonable detention would not reach back to make the promptly given statements inadmissible.[3]

*Fairness of lineup.*

Holding no period of unreasonable detention is here involved disposes of defendant's claim that the lineup here was conducted during a time when he was being unreasonably detained. Additionally, this court has held that the exclusionary rule as to statements made during a period of unreasonable detention does not apply to a lineup identification.[4] This leaves only the defendant's claim that the lineup, as conducted, was unduly suggestive. The trial court held to the contrary. The trial judge had before him the testimony of the eyewitness who had identified the defendant at the lineup. That witness testified that all five persons in the lineup were of the same race as the defendant, and all dressed casually. He also testified that there were differences as to height, but that some of the others in the lineup were "about the size of the defendant." The defendant

[3] *See Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525, holding that a statement typed and signed during a period of assertedly unreasonable detention was admissible as being no more than a copy of a statement taken during the first three hours of interrogation, clearly not a period of unreasonable detention.

[4] *Massen v. State* (1969), 41 Wis. 2d 245, 163 N. W. 2d 616, holding that ". . . a lineup is not condemned by *Phillips* and may well be consistent with *Phillips*. If the prosecutrix had not identified the defendant in the lineup it is probable he would have been released." (The reference is to *Phillips v. State, supra.*)

gave contrary testimony. Eighteen months after the lineup, he showed a total recall of the most minute details as to the dress and appearance of the others in the lineup. The trial court characterized his testimony as "fantastic." The trial court, who observed both, found the testimony of the eyewitness believable, and that of the defendant not to be believed. We have neither reason nor basis for reversing the finding of fact by the trier of fact that the lineup here involved was fairly conducted.[5]

*Waiver of counsel.*

Similarly, on the issue raised as to waiver of counsel, both at the time of making statements and at the time of the lineup, the trial court, in extensive findings made at the conclusion of the *Goodchild*-type hearing, accepted the testimony of four police officers and rejected the testimony of the defendant and one other witness. The trial court found that there was an intelligent, voluntary and complete waiver by defendant of his right to counsel. It is not necessary to set forth the conflict in testimony to observe that the issue was entirely one of comparative credibility, and such issue is for the trial court to determine as it here did.[6] This court

---

[5] "On review, it is not the function of the appellate court to decide which witnesses are to be believed. That is the exact function of the trier of fact, be such trier of fact the judge or a jury. Where credibility of witnesses is at issue, the trier of fact has an opportunity to observe the witnesses, their manner of testifying and their demeanor on the witness stand. These are the nuances that do not appear in a printed record." *State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803.

[6] *Id.* at page 127. *See also: State v. Carter* (1966), 33 Wis. 2d 80, 90, 91, 146 N. W. 2d 466, holding, "Where the court has made detailed findings of facts as was done here, our review . . . will be limited to the same review that is used in other factual disputes heard and determined by a trial judge. The findings of the trial court will not be upset unless they are against the great weight and clear preponderance of the evidence."

does not make an independent evaluation of what weight is to be given to the evidence offered.[7] With credibility for the trial court to determine, there is certainly sufficient evidence here to support the findings made as to waiver of counsel.

*Adequacy of warning.*

It is evident that the defendant was, as the trial court found, informed of his constitutional rights on more than one occasion while detained, and preceding any interrogations, and before the lineup identification. The two detectives who first interviewed him testified that they fully advised him of his constitutional rights, including the language that ". . . the answers could be used against him in any court of law." This preceded the defendant's confessing that he committed eight robberies, including the instant offense. Additionally, as the trial court found, Magistrate Kenney (a retired judge) fully and properly advised the defendant of his constitutional rights, including the *Miranda* mandate,[8] when the defendant appeared before him on another charge at 11:00 a. m. on the morning of his arrest. Following such clear and explicit instructions, at 5:30 p. m. the defendant gave a handwritten confession, written on a form that had on it this language: "I fully understand that what I say may be used for or against me in a court of law." The challenge is to the added words "for or." Here we would hold that the defendant had been earlier and fully advised of all of his constitutional rights, including the right not to incriminate himself. However, on the issue raised, we would go further. While not recommending that the phrase "for or against" be used, we do not find the augmented statement either entirely inaccurate or constitutionally defective.

---

[7] *Sharlow v. State* (1970), 47 Wis. 2d 259, 265, 266, 177 N. W. 2d 88.

[8] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

The printed statement was on the form paper used by the police department to record statements of defendants or witnesses. It was, therefore, intended for or addressed to all persons making any type of statement to the police, exculpatory or inculpatory. As to exculpatory statements, giving "in a court of law" a broad definition, an exculpatory statement might well lead to a dropping of the charge or reduction in the charge that would in the absence of the statement have been brought against the maker of the statement. If the statement was alibi in nature, or named another person as the doer of the deed, it might occasion the release of the suspect and the bringing of someone else to the court of law for trial. At the least, the innocent suspect making an exculpatory statement may secure for himself or others under suspicion an earlier release. It is the contents of the statement, not the fact of making a statement, that determine whether it can be used "for or against" the maker of the statement in or out of a court of law.

However, where the statement is in fact inculpatory, it is argued, and one court has even held,[9] that the addition of the words "for or" undercuts the effect of the warning and establishes an inducement to make a statement. Neither the reasoning nor the conclusion recommends itself as valid. Here the defendant voluntarily and understandingly admitted his participation in eight armed robberies. In what way, except as evidencing a cooperative attitude which might be a factor in sentencing, could such full confession, if usable at all, be used except to establish that he did what he was saying he did. Even a person of limited education or intelligence would know that his statement, if true, could be used only as a record of what he stated to be the facts. The statement "for or against" can only be read to mean

[9] *Commonwealth v. Singleton* (1970), 439 Pa. 185, 266 Atl. 2d 753.

that what establishes innocence might be used "for" and what establishes guilt might be used "against." It is the constitutional right against self-incrimination that is involved. If the defendant is warned that he need not make a statement and that, if he does, anything he says may be used against him, he is adequately informed of his right to remain silent. To add the possibility that a statement might, in some situations, be usable on his behalf is neither inaccurate nor fatally flawing. What is required is that he be made aware of his privilege, and possible consequences of his foregoing it.[10] On the record and findings of fact here made, we find no error in the admission of the various statements, oral and written, made by the defendant to the police officers.

### In-court identification.

The appeal includes an attack upon the in-court identification of the defendant as the robber by an employee of the store that was robbed. Only one eyewitness was called by the state during the trial to identify the defendant as the holdup man. At least a partial explanation for the other persons present not being called as witnesses derives from the fact that an unknown accomplice of the defendant had held their attention at gunpoint while the defendant was involved with the witness. The defendant's claim is that the in-court identification of the eyewitness is under a cloud because of such eyewitness having referred to the racial group

[10] ". . . This warning is needed in order to make him aware not only of the privilege, but also of the consequences of foregoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest." *Miranda v. Arizona, supra,* at page 469.

of which defendant is a member with a slang word, properly considered to be entirely derogatory. It is argued in the words of defendant's brief that ". . . The presence of such cloud, it is submitted, makes all of [the witness] . . . testimony—both lineups and in-court—so weak in character that it cannot be deemed truly corroborative of any statements against interest, oral or written, given by the defendant herein." It is clear that the use of derogatory terms in referring to members of a particular race, nationality or cultural group is to be discouraged, not encouraged. However, the effect in a court of law of any such use of language goes to the issue of credibility, not admissibility. A derogatory reference to an individual or group by a witness may well lessen the believability of such witness' testimony at least as to the individual named or a member of the group referred to. It is for the trier of fact to determine the degree of such lessening. The use of offensive language does not per se disqualify a witness nor ipso facto destroy the entire credibility of his testimony. This is particularly so, in a pluralist society, in which phrases highly offensive in certain circles of a society may be used with different intent and impact in other circles. Words may, and often do, indicate attitudes. But it is what is in the hearts and minds of men, and at least not always their choice of words, that indicates the bias or prejudice that can erode the weight to be given their testimony. The existence or degree of any such corrosion is not for the trier of fact to judge and determine.

Solely for the sake of completeness, we comment on the claim that the trial court should not have permitted a reference to one Charles Lewis in a cross-examination question phrased: "This Charles Lewis you say you saw on the 14th—is he the same Charles Lewis that is charged with you in another case?" Defendant answered: "Yes, sir." Lewis did not take the stand in

this case, but he had been referred to by the defendant in his testimony as being nearby at a time of interrogation of the defendant by the detectives. The trial court held the question to relate to the weight or credibility— not of Charles Lewis—but of defendant's testimony, negating any implication that there was a neutral and detached observer on the scene. Thus viewed, the question is analogous to asking whether a named but otherwise unidentified witness to a situation was in fact a brother-in-law or business partner. Particularly in a trial to the court, the issue is peripheral, without substantial impact on the basic issues presented. So it is not pursued further.

Finally, it is argued that the evidence here is insufficient to support the finding of guilt by the trial court, and that a new trial is required in the interests of justice. Where the statements of the defendant, the lineup identification and the eyewitness testimony of the store employee who was held up so overwhelmingly establish that the defendant was one of the two men who held up the supermarket, it is enough to conclude that the evidence clearly supports and the interests of justice clearly require that the judgment of conviction be affirmed. It is.

*By the Court.*—Judgment and order affirmed.