STATE, Respondent, v. CHABONIAN, Appellant.

*No. State 72. Argued March 3, 1971.—Decided April 2, 1971.*
(Also reported in 185 N. W. 2d 289.)

576

For the appellant there was a brief by *Shellow &
Shellow* and *Robert H. Friebert,* all of Milwaukee, and
oral argument by *James H. Shellow.*

For the respondent the cause was argued by *Michael
Ash,* assistant district attorney of Milwaukee county,
with whom on the brief were *Robert W. Warren,* attor-
ney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J.   On the issue of admissibility
of the admission made by the defendant to the police
officer that he knew the automobile was stolen when he
purchased it, three facts must be accepted as established:

1. It was made after the defendant had been fully in-
formed of his constitutional rights as required by *Mi-
randa.*[1]

2. It was volunteered.[2]

3. It was made after the defendant had retained
counsel, and while he was represented by said counsel.

---

[1] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602,
16 L. Ed. 2d 694.

[2] The trial court held the ". . . incriminating statement by de-
fendant given after counsel had been retained . . . not the result
of interrogation, eavesdropping, physical or mental coercion."

If the defendant did not have a lawyer representing him, it is clear that the first two facts would require a finding that his volunteered admission was admissible. Not only was the mandate of *Miranda* as to informing the defendant of his constitutional rights thrice complied with, but the requirements of *Miranda* do not apply to completely volunteered statements by a defendant.[3] In a recent case where the trial court had found a confession to be "completely voluntary," this court upheld its admissibility, stating: ". . . It is not a function of police authorities to protect a perpetrator of crimes against the promptings of his own conscience. . . ." [4] Whatever the precise nature of the motivation, unless the finding of fact of the trier of fact that the admission here was made and was volunteered is somehow set aside, it would establish admissibility if the defendant did not have a lawyer at the time he made it.

So the question asked on this appeal is whether a volunteered statement by a defendant becomes inadmissible if and only when the defendant is represented by legal counsel when he volunteers it. Unless the purpose is to protect against the impulse to volunteer of defendants who have a lawyer and not similarly protect those who are lawyerless, the defense attorney, rather than the defendant, would appear to be the one sought to be protected by holding a volunteered statement of his client in his absence inadmissible. He would be protected against his client volunteering any statements to the

---

[3] "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona, supra,* footnote 1, at page 478.

[4] *Crummel v. State* (1970), 46 Wis. 2d 348, 353, 174 N. W. 2d 517.

police when he was not present to join in hearing them. If the administration of criminal justice is to be in fact a search for the truth, no sound reason, much less constitutional provision, comes to mind for protecting client or counsel from the consequences of an entirely volunteered statement by his client to anyone.

Some courts, as we see it, have gone wrong in finding that, once a defendant has an attorney to represent him, statements volunteered by the defendant in the absence of such counsel are inadmissible. Such finding derives from a misreading and misapplication of the decision of the United States Supreme Court in the pre-*Miranda* case of *Massiah v. United States.*[5] In *Massiah,* as the Circuit Court of Appeals for the Fifth Circuit pointed out in a recent case: [6]

". . . the Court was concerned with the admissibility of incriminating statements made by a defendant to a confederate and overheard by police officers via a radio transmitter hidden on the confederate without the defendant's knowledge. The Court held that the admission of this evidence violated Massiah's Sixth Amendment right to counsel:
" '. . . We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. . . .' " [7]

The Fifth Circuit Court of Appeals sees *Massiah* as not answering ". . . a basic question: Are all post-indictment statements made without the presence of counsel inadmissible or are such statements tainted only when there exists some 'special circumstances' such as the

[5] *Massiah v. United States* (1964), 377 U. S. 201, 84 Sup. Ct. 1199, 12 L. Ed. 2d 246.
[6] *United States v. De Loy* (5th Cir. 1970), 421 Fed. 2d 900.
[7] *Id.* at page 901.

surreptitious radio surveillance there involved?"[8] The Fifth Circuit decision cites an appeals' court holding for the view that "all post-indictment statements obtained without counsel regardless of the circumstances" are inadmissible,[9] but lists more numerous and persuasive appeals' court decisions holding to the contrary.[10] For itself, the Fifth Circuit Court adopts the "more restrictive reading of *Massiah*," stating:

". . . We do not comprehend *Massiah* as a sweeping mandate tainting all post-indictment statements made by a defendant without the presence of his counsel. Police officers are not made constitutionally deaf to the uncoerced, insistent, and untricked statement of a properly warned defendant. . . ."[11]

This court has clearly adopted a more restrictive reading of *Massiah*, interpreting *Massiah* to be applicable only to situations where the accused was ". . . tricked or misled into confessing . . . ."[12]

It follows that in this state, in the absence of coercion or trickery, which would by themselves negative complete voluntariness, a volunteered statement, given in the absence of defendant's counsel, nonetheless is admissible. We would add only, while the mandate of *Miranda* is not here involved, the stated limits and purpose of the *Miranda* holding are. Where, post-*Massiah*, the United States Supreme Court in *Miranda* stated: ". . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today,"[13] that statement further supports our holding that a completely volunteered statement by

[8] *Id.* at page 901.

[9] *Id.* at page 902.

[10] *Id.* at page 902.

[11] *Id.* at pages 902, 903.

[12] *Davis v. State* (1967), 33 Wis. 2d 682, 684, 148 N. W. 2d 53.

[13] *Miranda v. Arizona, supra,* at page 478.

a defendant to a police officer can be made in the absence of defendant's counsel.

Defendant additionally claims he was denied the right to inspect statements previously made by a state witness to the police, the reference being to a statement assertedly made by witness Tuszkiewicz to the authorities. There was no showing made at the trial that any such statement had been made. Entitlement to inspection depends upon a request being made by the defendant,[14] and the record discloses no such request. A trial court ruling on a question asked during cross-examination did not block the making of the request required. The corollary claim that the ruling blocked impeachment of the Tuszkiewicz testimony is without impact where the trial court made it amply clear that he did not believe nor rely upon the Tuszkiewicz testimony or any aspect of it.

Defendant's motions for a new trial on the ground of newly discovered evidence and in the interest of justice were supported (1) by the introduction of statements of three witnesses that Tuszkiewicz was seen in possession of the car in September and October of 1967; in fact, seen driving it to and from his filling station; and (2) testimony by Detective Daniels that, after the trial, he had located the missing hood ornament, the original license plates of the car and personal property of the car owner behind a wall in the service station operated

[14] *State v. Richards* (1963), 21 Wis. 2d 622, 633, 124 N. W. 2d 684, holding: "We conclude that a defendant in a criminal case is entitled to inspect statements previously made to the authorities by witnesses called to testify on behalf of the state. This right goes only to statements or portions thereof concerning the subject matter of the witness' testimony and written or signed by the witness or given orally and stenographically or mechanically transcribed. . . . [A]*fter direct examination of the witness, upon request of the defendant* out of the presence of the jury, the court should order the state to produce for inspection all such statements of the witness in any of the forms referred to." (Emphasis supplied.)

by Tuszkiewicz at the time of the incidents involved in this case.

The five-fold test for the granting of a new trial on the grounds of newly discovered evidence is: ". . . (1) The new evidence was not discovered until after trial; (2) the party moving for a new trial must not have been negligent in seeking to discover such new evidence; (3) the new evidence must be material to the issue; (4) the new evidence must not be merely cumulative to testimony introduced at the trial; and (5) the new evidence must be such that it will be reasonably probable that a different result would be reached on a new trial. . . ." [15] The fifth requirement is a requirement for the granting of a new trial in the interest of justice. [16]

The newly discovered evidence clearly further damaged the credibility of the state witness Tuszkiewicz. That credibility had been weakened at the time of trial by his own contradictory statements with regard to his knowing about the car before it was in defendant's possession. The trial court held that the newly offered evidence "casts serious question concerning the credibility of Tuszkiewicz," but "does not go to the basic problem of whether the defendant had knowledge or belief that the car was stolen when he obtained it." It is knowledge on the part of the defendant that the car was stolen when it came into his possession that is crucial, not the part played by others in the theft of the car or earlier possession of it. As to the testimony of Tuszkiewicz, the trial court, as earlier noted, said: ". . . The court did not at the time of making the finding of guilt nor now base its determination of guilt upon the testimony or credibility of Tuszkiewicz. . . ."

[15] *Dunlavy v. Dairyland Mut. Ins. Co.* (1963), 21 Wis. 2d 105, 118, 124 N. W. 2d 73.

[16] *Lock v. State* (1966), 31 Wis. 2d 110, 116, 117, 142 N. W. 2d 183.

As to the probability of a different result being reached, the court stated in denying the new trial motions: ". . . The Court had serious doubts following the close of the testimony that the defendant was the only person who knew or believed that the automobile was stolen. The Court indicated then and indicates now that it is not satisfied that the whole story has been laid on the table, but there is enough of the story to support the finding of guilt of the defendant irrespective of whether other persons may or may not have had like knowledge that the property was stolen or that other persons might have had dealings with the property that would constitute an offense under the Criminal Code of Wisconsin."

As to the post-trial statements of witnesses that they observed Tuszkiewicz driving the stolen automobile, such newly discovered evidence relates to the Tuszkiewicz role in the chain of events, not to whether the defendant had knowledge that the car was stolen when he acquired it, helped repaint it and put illegal license plates on it. As to the testimony of Detective Daniels that he found the hood ornament, the original license plates, and papers of the owner behind the wall of Tuszkiewicz' filling station, the question is closer. While this also relates to the Tuszkiewicz role in what went on, it does directly relate to the state's contention that the defendant removed the hood ornament, thus further changing or altering or disguising the appearance of the stolen car. Detective Buxbaum testified that defendant told him he (the defendant) removed the hood ornament himself in keeping with his plan to use the car for racing, and that he had thrown the ornament away. The discovery by Detective Daniels of the missing hood ornament behind the wall of the Tuszkiewicz filling station does, or could support a reasonable inference, that defendant was telling the truth when he stated that he never saw the missing ornament, had not removed the ornament and did not admit doing so. That is not the only reasonable inference, but it is one such.

Where the trial was to the court, where the trial court held the newly discovered evidence to go primarily to the knowledge that the car was stolen on the part of others and not to affect the finding that the defendant had such knowledge, it is clear that the trial court held that the newly discovered evidence was not such that would make reasonably probable a different result upon retrial. The granting or denying of a motion for a new trial on the grounds of newly discovered evidence is within the sound discretion of the trial court.[17] While each case is to be considered on its own facts, on the facts here, we find no abuse of discretion in denying the motions for a new trial.

*By the Court.*—Judgment and orders affirmed.

WILKIE, J. (*dissenting*). I respectfully disagree. I would reverse for the reason that the incriminating statement made by the defendant to Officer Daniels (in the absence of retained counsel), as testified to by Officer Daniels, was erroneously received in evidence.

This statement occurred during the mix-up, or confusion, as Daniels testified, that prevailed when the defendant was traveling between the office of the district attorney and the magistrate (both in the Milwaukee County Safety Building).

While the group of seven described in the majority opinion was making one of these trips, Officer Daniels engaged the defendant in conversation. Defendant's counsel was not within earshot.

"Well, the conversation was about this Spinella, how he—the talk was about this Spinella, how he involved Chabonian and I told his [defendant's] dad he should talk to his son because his son was on probation now and if he didn't tell the truth, he was going to be hurt by it and all [the defendant] would say was that he—at the

[17] *Greer v. State* (1968), 40 Wis. 2d 72, 161 N. W. 2d 255, certiorari denied, 393 U. S. 1122, 89 Sup. Ct. 1002, 22 L. Ed. 2d 127.

time he knew the car was stolen, he didn't say he stole it but he said that he knew the automobile was stolen when he bought it from Tuszkiewicz."

Officer Daniels further testified he did not have occasion to ask the defendant how he knew the car was stolen when he bought it and that the defendant at no time elaborated on the subject. No one else heard the alleged admission and defendant stoutly denied ever making it. The only evidence in the record relating to the "conversation" is the above-quoted testimony of Detective Daniels.

In its decision, on motions after verdict, the trial court stated:

". . . The admission was not the result of interrogation, not the result of eavesdropping, not the result of deceit or artifice but was volunteered. The defendant denied making the admission and only he and Officer Daniels testified concerning it. Because of the voluntary nature of the admission made after the *Miranda* warnings were given, and actually in the immediate vicinity of counsel, I find that the defendant's right to counsel as defined by the Sixth Amendment of the Federal Constitution has not been violated and that the admission was properly received."

The majority agrees with the trial court: the admission was volunteered, *Miranda* does not affect volunteered statements; hence this statement was admissible.

As I see it, this reasoning is faulty for three reasons:

1. There is no evidence to support the conclusion that the statement was volunteered.

2. There is no evidence that the defendant waived his right to have his retained counsel present.

3. *Massiah* [1] and subsequent cases applying the rule of *Massiah* clearly show that defendant's sixth amendment right to counsel under the United States Constitution was violated.

[1] *Massiah v. United States* (1964), 377 U. S. 201, 84 Sup. Ct. 1199, 12 L. Ed. 2d 246.

*Statement not volunteered.*

*Miranda* is crystal clear that once a defendant requests counsel all "in-custody interrogation" is to cease. Admittedly, *Miranda* is limited to in-custody interrogation but this does not mean that it was concerned only with formal question-and-answer interrogation of a suspect. In *Miranda* the court was well aware of the many techniques used by police to elicit information from a defendant,[2] and it noted that it was its desire to assure counsel, or at the least, the opportunity for counsel, to every accused. *Miranda* notes that the presence of counsel will benefit not only the accused but the police as well. Such presence will not only inhibit police coercion or at least permit it to be exposed at trial, but will also "mitigate the dangers of untrustworthiness" both in the statement itself and in the reporting of it at trial by the prosecution.[3] Admittedly *"volunteered* statements of any kind are not barred by the Fifth Amendment." However, not only the absence of physical or mental coercion constitutes a statement "volunteered." The dictionary defines "volunteered" as "to offer . . . voluntarily or *without solicitation* or compulsion." [4] *Miranda,* in discussing what is necessary to establish a waiver, expressly states: "[*A*]*ny* evidence that the accused was threatened, tricked, or *cajoled* into a waiver will, of course, show that the defendant did not voluntarily waive" his rights.[5] This is further evidence that the court, aware of the many and various police techniques for eliciting information from an accused, did not look only to the absence of

[2] *Miranda v. Arizona* (1966), 384 U. S. 436, 445–456, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[3] *Id.* at page 470.

[4] Webster's New International Dictionary (3d ed., unabridged), p. 2564. (Emphasis added.)

[5] *Miranda v. Arizona, supra,* footnote 2, at page 476. (Emphasis added.)

coercion or formal question-answer questioning of a defendant. The statement must be "volunteered," and the examples of "volunteered" statements set out by the court indicate they were to be initiated by the defendant, spontaneous and unsolicited.[6]

Here, the only evidence presented as to the circumstances surrounding the disputed "conversation" was that of Officer Daniels himself that the "conversation" was about how defendant became implicated and Detective Daniels' own admission that he urged defendant's father to tell his son to talk since defendant was on probation and it would go hard on him if he didn't. This testimony not only does not support a finding that the admission was "volunteered" within the meaning of *Miranda,* but compels the opposite conclusion—that Detective Daniels actively and deliberately sought the admission.

### *No waiver.*

There is no evidence in this record which supports a waiver theory of defendant's right to have his retained counsel present when he made the statement to Officer Daniels. Where admissions are made by a defendant, *Miranda* requires that the state have the burden of establishing that the accused "knowingly and intelligently" waived his fifth and sixth amendment rights, and this is a "heavy burden."

The trial court and the majority state that this admission would not be excluded if defendant were not represented by counsel and therefore express concern that representation by counsel should make it inadmissible.

---

[6] ". . . There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." *Id.* at page 478.

The cases discussed *infra* indicate that the incriminating admission, under the circumstances here involved, should have been excluded because of the absence of defendant's counsel. However, the assumption that the admission would not be excluded had defendant not been represented by counsel is unwarranted. To conclude this is to find a waiver of his constitutional rights by the defendant.

*Miranda* states:

". . . But a valid waiver will not be presumed simply from the silence of the accused after warnings are given *or simply from the fact that a confession was in fact eventually obtained.*" (Emphasis added.) [7]

". . . No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense." [8]

### *Massiah and subsequent cases.*

The precise issue presented on this appeal and on which there is disagreement, is whether defendant's sixth amendment right to counsel as construed by *Massiah v. United States* [9] and subsequent United States Supreme Court decisions applying that case, has been violated. The conclusion is inescapable that under any permissible reading of these cases, the alleged incriminating statement here involved was improperly admitted against defendant.

The majority dismisses the sixth amendment challenge by citing this court's decision in *Davis v. State,* [10] which erroneously interprets *Massiah* as applicable only to situations involving police trickery and deception, and a

---

[7] *Id.* at page 475.

[8] *Id.* at page 476.

[9] *Supra,* footnote 1.

[10] (1967), 33 Wis. 2d 682, 148 N. W. 2d 53. This decision interpreted *Massiah* as applicable only to situations involving police trickery or deception.

Fifth Circuit Court of Appeals decision, *United States v. De Loy,*[11] which takes a restrictive view of *Massiah* but even under which view I think the incriminating admission was improperly admitted.

In *Massiah,* the defendant was indicted with another person for a violation of federal narcotics laws; Massiah retained an attorney, entered a plea of not guilty, and was released on bail. While free on bail, defendant had a conversation with a codefendant in an automobile, unaware that government agents, with the codefendant's cooperation, were monitoring the conversation by means of an electronic eavesdropping device. The agent testified to incriminating statements made by the defendant during the conversation.

The United States Supreme Court reversed, finding that defendant's sixth amendment right to counsel had been violated. The holding of the court was clearly stated:

". . . We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had *deliberately elicited* from him after he had been indicted and in the absence of his counsel. It is true that in the *Spano* case [*Spano v. New York,* 360 U. S. 315] the defendant was interrogated in a police station, while here the damaging testimony was elicited from the defendant without his knowledge while he was free on bail. But, as Judge Hays pointed out in his dissent in the Court of Appeals, 'if such a rule is to have any efficacy it must apply to *indirect* and surreptitious interrogations as well as those conducted in the jailhouse. . . .'" (Emphasis supplied.)[12]

Some courts thereafter pointed to the concluding sentence of the *Massiah* opinion to reach the conclusion reached by this court in *Davis v. State:*

---

[11] (5th Cir. 1970), 421 Fed. 2d 900.

[12] *Massiah, supra,* footnote 1, at page 206.

". . . All that we hold is that the defendant's own incriminating statements, obtained by federal agents *under the circumstances here disclosed,* could not constitutionally be used by the prosecution as evidence against *him* [original emphasis] at his trial." (Emphasis added.) [13]

In light of the express language of the holding, *supra,* however, it is clear that "the circumstances here disclosed" was not to be limited to deception only. And apparently the majority of courts did not so limit it. [14]

Any doubt as to the invalidity of such an interpretation was dispelled in *McLeod v. Ohio.* [15] In *McLeod* the defendant, under indictment for murder, made certain oral incriminating statements to police while helping them look for a gun used in a robbery. Testimony of the police regarding these statements was admitted against defendant at trial. The Ohio Supreme Court affirmed, finding no constitutional question involved. [16] The United States Supreme Court granted certiorari and reversed without opinion, remanding for further consideration in light of *Massiah.* [17] The Ohio court distinguished *Massiah,* holding that McLeod had made the incriminating statements voluntarily, before he was represented by counsel or had even requested any, and that there was no deception involved since defendant was knowingly and willingly cooperating with police officers. [18] This position, which is the same as that adopted by the majority here, was summarily rejected by the

---

[13] *Id.* at page 207.

[14] *See, e.g., Commonwealth v. Coyle* (1967), 427 Pa. 72, 233 Atl. 2d 542. For an analysis and summary of some of these cases, *see Anders v. State* (Tex. Crim. App. 1969), 445 S. W. 2d 167, 176–180 (concurring-dissenting opinion).

[15] (1965), 381 U. S. 356, 85 Sup. Ct. 1556, 14 L. Ed. 2d 682.

[16] *State v. McLeod* (1962), 173 Ohio St. 520, 184 N. E. 2d 101.

[17] *McLeod v. Ohio* (1964), 378 U. S. 582, 84 Sup. Ct. 1922, 12 L. Ed. 2d 1037.

[18] *State v. McLeod* (1964), 1 Ohio St. 2d 60, 203 N. E. 2d 349.

United States Supreme Court when it again granted certiorari and reversed without opinion, citing *Massiah*.[19]

The majority apparently ignores *McLeod*. However, it seems to imply that because *Massiah* was decided before *Miranda*, it has little vitality today. If there was any doubt about such a view, it was removed by the United States Supreme Court's post-*Miranda* decision in *Beatty v. United States*. [20]

In *Beatty* the defendant, under indictment for selling firearms in violation of the National Firearms Act, was represented by counsel and free on bail. The defendant notified one Sirles, the person to whom he had sold the guns, and requested a meeting with the purpose of persuading Sirles not to testify for the prosecution. Sirles notified federal agents who told him to go ahead with the meeting. In addition a federal agent was secreted in the trunk of the car where the conversation was held. At trial, *both* the informer Sirles and the federal agent testified as to the incriminating statements voluntarily made by the defendant.

On appeal, defendant contended the testimony of *both* Sirles and the agent should have been excluded under *Massiah*. The Fifth Circuit Court of Appeals rejected the argument, and affirmed. In doing so it noted that *Massiah* would exclude incriminating statements where "deliberately elicited" by police in the absence of retained or appointed counsel. It then cited the last sentence of the *Massiah* majority opinion and stated:

". . . We interpret this language as meaning that the exclusionary rule does not apply to all incriminating statements made under any circumstances by an accused after his indictment, but such rule only applies to those statements induced or deliberately elicited by officers or their agents from the accused after his indictment while he is without assistance of counsel. . . ."[21]

---

[19] *McLeod v. Ohio, supra*, footnote 15.

[20] (1967), 389 U. S. 45, 88 Sup. Ct. 234, 19 L. Ed. 2d 48.

[21] *Beatty v. United States* (5th Cir. 1967), 377 Fed. 2d 181, 189.

The court then went on to distinguish *Massiah,* noting that in *Beatty* the government did not in any way set up the meeting, but that it was suggested by the defendant; that defendant clearly needed no inducement of any kind since he wanted to assure that Sirles would not aid the prosecution; and that although an agent was secreted in the trunk of the car, Sirles' testimony was clearly admissible and sufficient with other evidence to convict defendant.

The United States Supreme Court reversed without opinion, citing *Massiah.*

In addition to *McLeod* and *Beatty,* a 1968 dissenting opinion of four members of the United States Supreme Court, in *Miller v. California,*[22] sheds considerable light on this area. In *Miller* a police informant was placed in defendant's cell to give oral reports of anything she might say with regard to the murder of her husband with which she was charged. At trial the informant testified as to certain unsolicited statements made by defendant. The California Court of Appeals recognized the validity of defendant's constitutional argument under *Massiah,* but also noted defendant's failure to object to the testimony in the trial court. The controlling factor, however, was that the court concluded the statements were not incriminating.[23]

The United States Supreme Court granted certiorari, but subsequently withdrew it as improvidently granted.[24] Four members of the court dissented. They viewed an objection made at trial as adequate to preserve the question on appeal, and further disagreed that the statements were not incriminating. As pertinent here, they stated:

"Respondent also contends that petitioner's constitutional rights were not violated, because [the informant]

---

[22] (1968), 392 U. S. 616, 88 Sup. Ct. 2258, 20 L. Ed. 2d 1332.

[23] *People v. Miller* (1966), 245 Cal. App. 2d 112, 53 Cal. Rptr. 720.

[24] *Miller v. California, supra,* footnote 22.

engaged in no 'process of interrogations,' *Escobedo v. Illinois* . . . designed to obtain a confession from petitioner, or that statements from her had not been 'deliberately elicited,' *Massiah v. United States* . . . . In the state's view, so long as [the informant] acted simply as a listening post, she could testify as to any statements made to her by petitioner. That view was, however, rejected in *Massiah* itself. The government in that case pointed to the fact that the record did not reveal that its agent had induced the defendant by persuasion (there based on friendship) to discuss his activities, and urged that 'providing a defendant an opportunity to talk' [citing the government's brief in *Massiah*] did not violate his right to counsel. See also *Beatty v. United States* . . . ." [25]

Under these United States Supreme Court cases the majority's view regarding the interpretation to be given *Massiah* is erroneous.

In addition, the majority of federal courts which have addressed themselves to the question have held that once counsel has been retained or appointed, any deliberate attempts on the part of the police or their agents to elicit information from a defendant in the absence of his counsel or a "clear and explicit" waiver of the right to have him present, are prohibited, and that any incriminating statements so obtained may not be used against him at trial.[26] The vast majority of state courts have so held also.[27] This is the "restrictive" view noted by the Fifth Circuit in *De Loy, supra.*

In addition, those courts considering the question who h .ve considered *McLeod* and/or *Beatty,* have gone further and held that *Massiah* commands that all oral communications between defendant and the police made after

---

[25] *Id.* at pages 625, 626.

[26] *United States v. Garcia* (2d Cir. 1967), 377 Fed. 2d 321; *Beatty v. United States, supra,* footnote 21; *United States v. Gardner* (7th Cir. 1965), 347 Fed. 2d 405.

[27] *Supra,* footnote 14.

indictment in the absence of counsel are inadmissible.[28] This is the "broader" interpretation of *Massiah* referred to in *De Loy*.

I have no doubt that the present case comes clearly within the purview of even the "restrictive" reading of *Massiah* as stated by the Fifth Circuit itself,[29] and by other courts that apparently adopt the restrictive view.[30] While there may not have been any "interrogation" in the sense of formal question-and-answer sessions, there is little doubt that the testimony of Detective Daniels himself indicates his "conversation" with defendant was aimed at getting incriminating information from defendant. Under any of the readings of *Massiah* discussed above, the admission should have been excluded.

I agree with the majority that "the administration of criminal justice is to be in fact a search for the truth . . . ." However, I cannot agree with the implication that the mere presence of a defendant's counsel will somehow prevent the truth from being determined. This argument was expressly considered and rejected in *Miranda*. The essential problem in all these cases is not so much a question of right to counsel as a waiver of that right. The entire line of supreme court cases in this area,

---

[28] *Hancock v. White* (1st Cir. 1967), 378 Fed. 2d 479; *United States ex rel. O'Connor v. New Jersey* (3d Cir. 1969), 405 Fed. 2d 632; *People v. Milani* (1968), 39 Ill. 2d 22, 233 N. E. 2d 398. The Seventh Circuit Court of Appeals seems to have adopted this position as well. *United States ex rel. Milani v. Pate* (7th Cir. 1970), 425 Fed. 2d 6.

[29] *Supra,* footnote 21, 377 Fed. 2d at page 191; *De Loy, supra,* footnote 11, 421 Fed. 2d at page 902.

[30] While some state courts have excluded statements obtained, in the absence of counsel, when the result of "interrogation," it is clear that they are willing to look at the true nature of any "discussions" or "conversations" which give rise to the incriminating statements. *See, e.g., State v. Gallagher* (1964), 97 Ariz. 1, 396 Pac. 2d 241; *People v. Paulin* (1969), 25 N. Y. 2d 445, 306 N. Y. Supp. 2d 929, 255 N. E. 2d 164.

including *Spano*,[31] *Gideon*,[32] *Massiah*,[33] *Escobedo*,[34] *Miranda*,[35] etc., lead to the inescapable conclusion that the presence of counsel will best effectuate the truth-finding process and do so consistently with constitutional principles. These cases indicate a continuing concern with the precise situation here involved: a swearing match between a police officer who states the defendant made an incriminating statement in a manner consistent with his constitutional rights, and a defendant saying either that he did not make the statement at all, or that it was made in response to unconstitutional methods of reaching the "truth." This court is duty bound to abide by the provisions of the constitution and the mandates of the United States Supreme Court interpreting these provisions. To do so here requires that the alleged incriminating admission here involved be excluded. The failure to do so in the trial court in this case requires reversal.

I am authorized to state that Mr. Chief Justice HALLOWS and Mr. Justice HEFFERNAN join in this dissenting opinion.

---

[31] *Spano v. New York* (1959), 360 U. S. 315, 79 Sup. Ct. 1202, 3 L. Ed. 2d 1265.

[32] *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799.

[33] *Supra*, footnote 1.

[34] *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977.

[35] *Supra*, footnote 2.