McCLELLAN, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 40. Argued January 5, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 711.)

* Motion for rehearing denied, without costs, on March 28, 1972.

For the plaintiff in error there was a brief and oral argument by *Robert L. Swanson* of Milwaukee.

For the defendant in error the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HEFFERNAN, J. The record reveals that on July 6, 1970, the defendant was questioned by officers of the Milwaukee Police Department at the Bay View State Bank and was subsequently questioned further at the police station. Defendant contends that, at each place he was in custody, he was interrogated in violation of the rights conferred by *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, and that inculpatory and exculpatory statements given at the two locales should have been excluded from evidence.

The incident at the Bay View State Bank occurred on July 6, 1970. On that date, a check made payable to Rosemary A. Verbanac and bearing the endorsed signatures of Rosemary A. Verbanac and Patrick E. McClellan was returned to the Bay View State Bank, together with an affidavit of Miss Verbanac that her endorsement on the check was a forgery. This check had been deposited at the Bay View State Bank on June 30, 1970, by McClellan. There was testimony that the defendant McClellan had deposited a total of $2,230.18 in payroll checks with the Bay View State Bank. All of them were worthless.

Sometime after 12:30 p. m. on July 6th, McClellan appeared at the Bay View State Bank to withdraw cash from the savings account and also to negotiate a loan. Upon McClellan's arrival at the bank, the police were notified. Wilbert E. Evers, vice-president of the bank, asked the defendant about the Verbanac check. McClellan stated that he was a silent partner in a tavern business and that one of the bartenders must have cashed the

check. He at no time denied that the second endorsement on the check, "Patrick E. McClellan," was his own. At approximately 2 o'clock, two city of Milwaukee detectives appeared at the bank.

At the hearing brought on the motion to suppress the evidence of statements made at the bank, Detective Berg stated that the defendant said he "wanted to clarify the situation." The defendant acknowledged that he made that statement. Defendant explained to the detectives that he was a silent partner in a tavern because he had a previous felony conviction and therefore could not obtain a license. He maintained that, as such silent partner, he was entitled to a share of the proceeds and that he had received the Verbanac check as a part of that agreement.

The defendant was not placed under arrest at the bank and received no warnings of his constitutional rights under *Miranda*.

The defendant testified at the hearing that he requested permission to use the washroom at the bank, but he was told by the officers that there were no public facilities available. It is undisputed that, when it was suggested that he accompany the detectives to the Safety Building, the defendant said, "I said I would be glad to drive down to the Safety Building and clear this matter up." Although McClellan asked to drive his own car, it is acknowledged that he willingly accompanied the officers to the Safety Building.

The statements given at the bank were wholly exculpatory in nature. However, *Miranda, supra,* excludes exculpatory, as well as inculpatory, statements where a suspect is under custodial interrogation. *Miranda,* at page 444, defines "custodial interrogation" as:

". . . questioning initiated by law enforcement officers after a person has been taken into custody or other-

wise deprived of his freedom of action in any significant way."

If the conditions described as "custodial interrogation" exist, questioning can only proceed after compliance with the *Miranda* warnings. It is conceded by the state that *Miranda* warnings were not given at the bank, but the state argues that the defendant was not in custody.

Following the hearing out of the presence of the jury, the trial court made the finding that the exculpatory statements made at the bank were volunteered and that the statements in regard to the circumstances under which he secured the check and that he was a silent partner in a tavern business were spontaneous declarations of the defendant, not elicited in response to interrogation. In *Sharlow v. State* (1970), 47 Wis. 2d 259, 177 N. W. 2d 88, we stated that the trial court's finding in respect to the admissibility of out-of-court statements would be sustained unless such findings were against the great weight and clear preponderance of the evidence. There seems to be no doubt, from a perusal of the record, that the exculpatory statements given to the bank officer and to the detectives were volunteered. It is argued, however, that at some point in the interview, the interrogation became custodial in nature and was therefore in violation of the *Miranda* rule. We fail to find any specific determination by the trial court that the defendant was not in custody while at the bank. It therefore becomes necessary, under the mandate of *State v. Carter* (1966), 33 Wis. 2d 80, 146 N. W. 2d 466, to review the evidence in this respect. We are satisfied from a de novo review of the facts that the defendant was not in custody while at the bank. His story was a plausible one, and the defendant insisted that it be checked out. He stated that he was a businessman and wanted to clear the matter up.

While the defendant now claims that he was in custody because he could not go to the washroom, the evidence is

undisputed that there was none available. When the detectives and the defendant arrived at the Safety Building, he was permitted to go to the washroom.

It should also be pointed out that the exculpatory statements in respect to the silent partnership in the tavern business were repeated by the defendant on his own volition at the time of trial. He continued to insist that the circumstances of his obtaining of the check were as originally stated at the bank.

While we conclude that the exculpatory statements were not obtained in violation of the *Miranda* rule, since they were not only volunteered but free from any significant custodial detention, they were, in addition, totally harmless in determining the outcome of the trial. Since the very statements given at the bank which the defendant seeks now to have excluded were repeated by him at trial, we can only come to the conclusion that beyond a reasonable doubt his conviction was not influenced by the admission of the exculpatory statements given at the bank. *See Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705.

The defendant also claims that statements given to the two detectives at the Safety Building were improperly admitted into evidence. When the defendant arrived at the Safety Building with the detectives, they went to the office of an assistant district attorney. As soon as the situation was explained to the assistant district attorney, he concluded that the defendant was subject to custodial interrogation and immediately gave him the *Miranda* warnings. It is undisputed that, from this point on, defendant was in custody and could be interrogated only if there were a specific waiver of his *Miranda* rights or if he volunteered a statement that was not the product of trickery, threats, or cajoling. *See Miranda, supra,* page 476. Defendant now claims that the *Miranda* warning was insufficient because the district attorney informed the defendant that, ". . . anything he said might be

used *for* or against him in a Court of law . . . [and] he [the defendant] had an opportunity to have an Attorney present during any questioning *I* asked him." (Emphasis supplied.) At the time of trial, defendant's attorney acknowledged "that Mr. Gorenstein [the assistant district attorney] correctly advised the defendant of his constitutional rights."

It appears, therefore, that there was a specific waiver in the trial court of any objections to the adequacy of the assistant district attorney's *Miranda* admonitions.

The objection made at the time of trial was not to the adequacy of the warning, but to information elicited allegedly in violation of the standards contained in the warning. Although we are satisfied the adequacy of the warning cannot be raised as a matter of right for the first time in the course of the appellate process, we will nevertheless consider it.

In *Quinn v. State* (1971), 50 Wis. 2d 101, 183 N. W. 2d 64, this court concluded that to warn a defendant that a statement given in the course of custodial interrogation could be used "for or against" him was not sufficient to vitiate the warning. We pointed out:

"If the defendant is warned that he need not make a statement and that, if he does, anything he says may be used against him, he is adequately informed of his right to remain silent." *Quinn, supra,* page 110.

While we cautioned against the giving the type of warning minimally approved in *Quinn,* we did not find it, in those circumstances, to be constitutionally defective. It is, however, a practice that should not be encouraged, and in some circumstances could result in the vitiation of an otherwise antiseptic confession.

We are not faced with that situation here, since the defendant stated that he fully understood his constitutional rights and, immediately after the giving of the warning, asked for an attorney. He was then and there

permitted to talk to his attorney on the telephone. The defendant acknowledged that his lawyer told him, ". . . don't say nothing." Having been given the immediate right to confer, though briefly, with his attorney, it is apparent that the somewhat inaccurate admonition in no way prejudiced the defendant's rights. We are equally satisfied that the defendant's claim that he thought the warning only applied to interrogation by the assistant district attorney and not to further interrogation by the police officers is completely spurious.

Without interrogation and after having called defendant's attorney, the prosecutor directed that the defendant be taken to the waiting room of the district attorney's office in the custody of the two detectives while a complaint and warrant, drafted by the assistant district attorney, were typed. At this point, defendant's attorney had not arrived and defendant had had the opportunity to speak to him but briefly on the telephone.

It is undisputed that the defendant and Detective Berg were sitting side-by-side in the outer office waiting for the complaint. According to Detective Berg, he did not question the defendant about the crime. Instead, he stated that he and the defendant were engaged in general shop talk about worthless checks and forgeries. Berg commented to the defendant that he was "an amateur." That testimony, as paraphrased in the state's brief, follows:

"*Defendant:* 'What do you mean?'
"*Berg:* 'We just had a fellow that cashed over $5,000 at a bank and got away with it.'
"*Defendant:* 'Wait a minute. I'm not an amateur. I passed almost that many myself in one day.'
"*Berg:* 'Well I don't believe you. Hey, I don't even believe you wrote that one name. *Who did that for you?*'
"*Defendant:* 'I wrote that name on that check.'
"*Berg:* 'Well, how did you do it?'" (Emphasis supplied.)

The defendant thereupon wrote the name, "Rosemary A. Verbanac," on a manila envelope given to him by the

detective and also wrote his own name. Berg also testified that the defendant at this juncture admitted he had forged the Verbanac signature and he was demonstrating to the officer how he had done it. Subsequently, the defendant acknowledged that he wrote the names to demonstrate how it could have been done, but he denied that he had forged Rosemary A. Verbanac's name.

Admittedly, the statements given by the defendant were highly inculpatory. It is admitted that the defendant was in custody at the time and was safeguarded by the constitutional rights explained in *Miranda.*

The trial judge found that the statements of the defendant to Detective Berg were the result of the defendant's "braggadocio" and that the statements were volunteered and therefore admissible. Defendant relies upon *Miranda, supra,* page 474: "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." The state relies upon *Miranda,* page 478: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

The majority of this court concludes that, under the rationale of *State v. Chabonian* (1971), 50 Wis. 2d 574, 185 N. W. 2d 289, McClellan's statements and the writing given to the detective were admissible. In *Chabonian,* after the defendant had been advised of his right to an attorney:

"On one of the back-and-forth walks in the fourth floor corridor . . . the defendant admitted to Detective Daniels '. . . that he knew the automobile was stolen when he bought it from Tuszkiewicz.'" *Chabonian,* page 577.

We held that:

". . . in this state, in the absence of coercion or trickery, which would by themselves negative complete voluntariness, a volunteered statement, given in the absence

of defendant's counsel, nonetheless is admissible." *Chabonian*, page 581.

If, in fact, McClellan's statement to Detective Berg was "volunteered," the statements are without doubt admissible. In *Chabonian*, although a minority of the court disagreed, it was concluded as a matter of fact that the statement was volunteered. The majority concluded that a volunteered statement constituted an express waiver of the right to remain silent.

The majority in this case is equally satisfied that the statement of McClellan was volunteered and constituted a waiver of the *Miranda* rights. Under such view, *Chabonian*, of course, controls.

The author of this opinion, together with Mr. Chief Justice HALLOWS and Mr. Justice WILKIE, concludes, however, that the findings of the trial judge in this respect are contrary to the great weight and clear preponderance of the evidence. For a statement to be volunteered, it cannot be the product of police interrogation. A plain reading of the testimony at the hearing on the admissibility of the statement shows that Detective Berg not only goaded the defendant into a response, but specifically asked him, referring to the signature of Rosemary A. Verbanac, "Who did that for you?" and ". . . how did you do it?" The colloquy between the detective and the defendant is a far cry from the simple statement of the defendant in *Chabonian*. Clearly, the statements of the detective were calculated to elicit an inculpatory response. They were successful, and the statements made at that point, in the view of the author of this opinion, constituted a clear violation of the defendant's rights laid down in *Miranda*. The writer of this opinion adheres to the rationale of the dissent by Mr. Justice WILKIE expressed in *State v. Chabonian, supra,* page 585 *et seq.*

The erroneous admission of this evidence, in the view of the author of this opinion, constitutes prejudicial error, since it cannot be said, under the rationale of *Chapman, supra,* that beyond a reasonable doubt that evidence did not affect the jury's finding that the defendant was guilty.

The majority concludes, however, that the statements were volunteered and were not the result of custodial interrogation. Accordingly, the judgment is affirmed.

*By the Court.*—Judgment affirmed.